UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **PAMELA HALL** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No. 2:16-cv-02729- JTM-KGG |
| | ) |
| **LIFE CARE CENTERS OF** | ) |
| **AMERICA, INC. (D/B/A LIFE** | ) |
| **CARE CENTER OF KANSAS CITY)** | ) |
| **MICHELLE YOSICK** | ) |
| | ) |
| **Defendants** | ) |

**PLAINTIFF'S MOTION TO ENFORCE
DISCOVERY AND SUGGESTIONS IN SUPPORT**

Plaintiff, by and through counsel, hereby moves the Court to compel Defendants Life Care Centers of America, Inc. (LCCA) and Michelle Yosick ("Yosick") to produce discovery in response to Plaintiff's First and Second Requests for Production as set forth below:

**I.    Nature of the Matter Before the Court and Factual Background of Discovery Dispute.**

Before the Court is Plaintiff's Motion to Enforce Discovery in this employment discrimination and retaliation matter. Specifically, Plaintiff Pamela Hall alleges she was wrongfully terminated in violation of the Family and Medical Leave Act (FMLA), the Americans with Disabilities Act (ADA) and Age Discrimination in Employment Act (ADEA). She initially signed a release of claims at the time she was terminated, but revoked her signature. Defendants claim the revocation is not effective and further deny they fired Plaintiff, but rather claim she voluntarily resigned. However, at the time she returned from her FMLA leave, Defendants had a severance agreement with a release of claims ready for her to sign, and Plaintiff's testimony will be that she was told by Yosick she was being fired (i.e. she didn't have a choice in the matter).

1

After an initial unsuccessful effort to confer on the discovery disputes at issue, the parties held a telephone conference on September 29, 2017. Ultimately, the Court advised the parties to confer further. Counsel for the parties did confer but, to this day, Defendant LCCA has provided very limited supplemental production and has yet to supplement its written discovery responses such that Plaintiff has been left in the dark as to what information is forthcoming and what information is being withheld. Plaintiff's records show that the last time Defendants provided any discovery was in late October 2017, but there is a substantial amount of information still not produced. Moreover, Defendant Yosick has yet to file any responses or objections *at all* as to Plaintiff's First Requests for Production. And no privilege log has been served, and none of the responses to Plaintiff's document requests indicate what documents are responsive to what requests. At this point, Defendants should be compelled to produce updated responses referencing what documents are responsive to what requests, and deemed to have waived any privilege objections.

Indeed, despite the Court's Orders extending Plaintiff's deadline to file a motion to compel and a granted extension on the same deadline (Docs 55 and 56), Defendants have been silent as to their intent to comply with their discovery obligations. Defendants have not provided even an anticipated timeframe for production as to purported supplemental documents. As a result, Plaintiff's counsel is left guessing and is all but forced to file this motion to compel in order to get things moving as discovery ends at the end of March, and no depositions have been taken or scheduled. Plaintiff's counsel's certification of efforts to resolve discovery disputes is attached as **Exhibit A**.

## II. Statement of Discovery Requests at Issue and Argument.

More and more recently, undersigned counsel has found that defendants in employment cases, at least initially, limit responsive discovery to information and documents strictly about

Plaintiff and otherwise object to responsive discovery that could show differential treatment, or that the defendant failed to follow its own policies and practices. And this is true even though the discovery requests are well within the bounds of reasonable discovery as defined by District of Kansas cases. In other words, employers object to the very evidence an employment litigant requires to prove his or her case. Undersigned counsel believes this occurs, at least in part, because defendants know the plaintiff and her counsel will need to confer about what is objected to and not produced before the issue can be taken up with the Court. Thus, no harm befalls the defendant by shifting the burden to Plaintiff to go through the paces of indicating exactly what is wanted, and why. Objecting to clearly relevant and reasonable discovery requests is low risk to the employer because of the imbalance of information available to the employee (usually nothing more than circumstantial evidence and speculation as to what she believes, but doesn't know for sure, was discussed and decided behind closed doors) as opposed to that available to the corporate employer. Such a pattern is evident here. In Plaintiff's view, objecting to and withholding information like policy records, e-mails, personnel files, and complaint documents as to supervisors in an employment discrimination case, is obstructive, a complete waste of time, and requires plaintiffs and their counsel, and the Court, to jump through hoops that are completely unnecessary and drive up the cost of litigation, and puts the plaintiff at a disadvantage in that, as is the case here, depositions will need to be taken without plaintiff and her counsel having complete responses to discovery.[1]

---

[1] *See* ***Lopez v. Dlorah, Inc.***, 11-1101-CV-SJ-ODS, 2012 WL 4023439 at *3 (W.D. Mo. Sept. 12, 2012) ("Defendant defends its conduct by contending that it objected to the question and announced its interpretation before the deposition. The Court is not impressed. Defendant is essentially asking the Court to excuse its misconduct because it provided advance notice to Plaintiffs that it was unfairly and unnecessarily re-wording Topic 6. An advance warning does not provide a valid defense to impropriety. This sort of misconduct – undue narrowing, feigned misunderstanding, and multitudes of unnecessary objections – is the bane of litigation. It drives up costs, brings dishonor to the profession, and – worst of all – thwarts justice by obfuscating the **search for the truth**. It is gamesmanship. It is inappropriate. It is also sanctionable – even if Defendant announced in advance that it planned to engage in sanctionable conduct.") (emphasis added) *see also* ***Fairbanks v. Weitzman***, 13 S.W.3d 313, 327 (Mo.App.E.D.2000) ("The purposes

3

The discovery requests at issue in this Motion are set out below, and the complete responses and objections are attached and excerpted in **Exhibit B** (Plaintiff's First Requests for Production) and **Exhibit C** (Plaintiff's Second Requests for Production).

### A. Plaintiff's First Requests for Production.

1. Requests for production of personnel records of decision makers, and key human resources witness who had input in the decision (RFP 2, 7).

Plaintiff's counsel has been advised as to who were decision makers as to Plaintiff's termination. The individuals identified thus far are Defendant Yosick, Defendant LCCA's in-house counsel (who was involved in drafting a severance and release agreement) and Division Vice President Eric Doerhoff. In addition, LCCA's Human Resources employee Jamie Corradini provided information to management about Plaintiff and her medical leave and, according to defense counsel, "approved" Plaintiff's termination. While Defendants have taken the position that Plaintiff resigned, Plaintiff maintains she was involuntarily terminated in connection with an FMLA qualified leave of absence that was communicated through LCCA's human resources department. Thus far, Plaintiff has received the personnel records of only Defendant Yosick.

But the law in the District of Kansas is clear that documents as to all decision makers and other key witnesses are discoverable in employment cases. *See White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.*, 586 F. Supp. 2d 1250, 1259 (D. Kan. 2008) ("Courts in the District of Kansas have generally held that an individual's employment records are relevant and/or reasonably calculated to lead to the discovery of admissible evidence, and therefore discoverable, if the individual (1) is alleged to have engaged in the retaliation or discrimination at issue, (2) is alleged to have played an important role in the decision or incident that gives rise to the

---

of discovery are to eliminate concealment and surprise, to aid litigants in determining facts prior to trial, [and] to provide litigants with access to proper information with which to develop their respective contentions and to present their respective sides on issues framed by the pleadings.") (internal quotation marks and citation omitted).

lawsuit) *citing:* ***Williams v. Bd. of County Comm'rs***, No. 98–2485–JTM, 2000 WL 823909, at *5 (D.Kan. June 21, 2000) (compelling production of personnel files of non-party individuals who were alleged to be involved in the specific events giving rise to the lawsuit); ***Daneshvar v. Graphic Tech., Inc.***, Civ. A. No. 97–2304–JWL, 1998 WL 726091, at *5 (D.Kan. Oct. 9, 1998) (compelling production of personnel files of three "key witnesses" who "played important roles in the employment decisions affecting plaintiff"); ***Krenning v. Hunter Health Clinic, Inc.***, 166 F.R.D. 33, 35 (D.Kan.1996) (compelling production of personnel files of alleged harasser and employer's chief executive officer); ***Fox–Martin v. H.J. Heinz Operations***, No. 02–4121–JAR, 2003 WL 23139105, at *1 (D.Kan. Dec. 19, 2003) (Title VII action in which court compelled production of personnel files of employees who either played important roles in the employment decisions or allegedly participated in or witnessed the hostile work environment); ***Oglesby v. Hy–Vee, Inc.***, No. Civ. A. 04–2440–KHV, 2005 WL 857036, at *2 (D.Kan. April 13, 2005) (compelling production of individual's personnel file in employment discrimination case where individual witnessed the events defendant claimed gave rise to plaintiff's termination), *see also* ***Kear v. Kohl's Dep't Stores, Inc.,*** No. 12-1235-JAR-KGG, 2013 WL 628331, at *4 (D. Kan. Feb. 20, 2013) (supervisor personnel file is discoverable despite privacy objections), ***Oglesby v. Hy-Vee, Inc***., CIV.A. 04-2440-KHV, 2005 WL 857036 (D. Kan. Apr. 13, 2005) (requiring production of a coworker's personnel file because it "***may*** support Plaintiff's claims that Defendant's reasons for firing Plaintiff are pretextual, or demonstrate a pattern and practice of age discrimination by the store manager. Such evidence is relevant even in a case alleging only individual discrimination.") (emphasis supplied); ***Lyoch v. Anheuser-Busch Companies, Inc.***, 164 F.R.D. 62, 68-69 (E.D. Mo. 1995) (ordering production of supervisor's personnel records, despite argument of confidentiality but made subject to protective order).

Here, Plaintiff's discovery requests implicate and seek the production of personnel files for anyone who had input into the decision to terminate Plaintiff's employment, which Plaintiff understands to be Jaimie Corradini, Defendant LCCA's in-house counsel[2], Eric Doerhoff, and Defendant Yosick. But as Defendant LCCA has only produced a personnel file for Defendant Yosick, Defendant LCCA is noncompliant with its discovery obligations.

2. <u>Request for searches of electronic devices and electronic documents that contain relevant information based on targeted search terms or narrow dates (RFPs 8, 28, 30, 31, 34, 35, 38, 40).</u>

Plaintiff submitted multiple discovery requests that outlined specific search terms, search time-frames, devices to be searched, and a description of custodians as to which searches are to occur. After conferring and agreeing to limit email searches to specific email accounts (rather than the entire server), LCCA moved forward with searches (presumably using Plaintiff's search terms and date parameters) but without complete agreement as to what custodian and devices would be searched. Although Plaintiff has been told that LCCA's searches for ESI located 20,000 documents (which have been under review for months now), Plaintiff has no specific information regarding what devices and custodians have been searched.

As drafted, the Requests for Production at issue in this topic seek electronically stored documents from custodians who made the decision to terminate Plaintiff and specifically as to human resources employees Jaimie Corradini and Annette Sharpe, and as to Defendant Michelle Yosick.  LCCA also identified Eric Doerhoff as a decision maker and, as explained above, in-house counsel clearly had a role in the decision. The requests also seek to ensure cellular phones are also searched to recover responsive text messages. In pulling the 20,000 documents, defense counsel has not advised how it identified custodians, and further asserted that the only searches for text messages were performed as to Defendant Yosick's cellular phone.

---

[2] Plaintiff does not yet have the name of in-house counsel.

6

At a minimum, Defendants should be compelled to respond to the requests, and indicate what search terms were used, and what custodians and devices were searched, and produce responsive documents.

The last communication Plaintiff's counsel received on supplemental production, including the alleged 20,000 documents, was November 29, 2017 stating: "Our supplemental responses to the interrogatories and first RFPs will be forthcoming." At this time, Plaintiff's counsel is not aware of a single document being produced as to the searches called for by the requests at issue in this topic and consequently, given the delay, Plaintiff is left with no choice but to press forward with a motion to compel on these discovery requests.

3. <u>Policy manuals, handbooks and policies applicable to or used by Defendant LCCA's human resources department as part of their job duties within the past five years (RFP 15).</u>

As referenced in the introductory paragraphs of this brief, Plaintiff is simply seeking the documents which would guide and instruct human resources professionals on how to do their jobs for LCCA. Oftentimes large (and even small) corporations have such manuals and policies that are specialized for use by their human resources professionals and include a great deal of relevant information, such as performance management, statements of corporate policies and goals, etc…. Obviously, to the extent LCCA did not follow its own internal policies or guidelines regarding matters raised as part of this suit, this would be highly relevant and almost certainly admissible evidence in Plaintiff's case. But LCCA's discovery response is limited to specific policies to the exclusion of, presumably, other described and non-specified policy material. Given the objections and offer of partial production of responsive material, Plaintiff notes that LCCA's discovery responses fail to disclose which responsive policy documents it intends to withhold. As such, Defendant's response is not compliant with FRCP 34(b)(2)(c).

The Court should find LCCA has not preserved its objections and otherwise order production of the material responsive to this request.

4. <u>Training material from within the past five years as to disability, age discrimination and family medical leave training taken by decision makers, management and/or human resources employees (RFP 16).</u>

For the same reason the documents as to Topic 3 are discoverable, so is the material as to this Topic.  Plaintiff, to date, has no clarity on the extent to which LCCA has or has not responded to this request, or to what extent it will be responding to this request. The way the response is written, it appears that the information will be carefully sifted and segmented such that only certain documents from within the training will be provided rather than the full context of the training. Plaintiff believes it is inappropriate to sift such material because it removes contextual information and ostensibly related training.

5. <u>Separation agreement presented to Plaintiff, and all drafts (including native copies) of the separation agreement (RFP 18).</u>

LCCA objected to producing the separation agreement and drafts of the eventual separation agreement provided to Plaintiff based primarily on the grounds of privilege and work-product. LCCA's work-product objection is not applicable here, as it cannot show that the document was created in "real and imminent" anticipation of litigation. *See McCoo v. Denny's Inc.*, 192 F.R.D. 675, 683 (D. Kan. 2000). While LCCA presumably contends drafts of the separation agreement reflect attorney-client privilege, it has not provided a privilege log delineating the communication it claims as privileged. The timeline of the creation of the separation agreement, which would be set out in a privilege log, is relevant also to the dispute between the parties as to whether Plaintiff voluntarily quit or was fired.

6. <u>All files (complaint, personnel and investigative) maintained on Defendant Yosick (RFP 20).</u>

LCCA objects to this request and agrees only to provide the "personnel file" of Yosick and further stated it will be removing "personal" information from its production (without explanation of what is meant by "personal"). But for the same reason that personnel files are discoverable, the

8

complaint and investigative information sought by RFP 20 is also discoverable. For instance, complaints may reflect evidence regarding the manner in which Yosick treated other employees, or complaints may reflect information about Defendant Yosick's conduct and actions taken by LCCA in response to such conduct. Such information may reflect important contextual facts about LCCA's conduct toward employees who are not in protected classes, or who did not take FMLA like Plaintiff and may help establish motive and intent as it relates to Plaintiff's claims.

Plaintiff further notes that LCCA's objection to this request is more in the form of a boilerplate objection and, as such, should be overruled. Further, as LCCA's response implies the existence of other undisclosed responsive information, its failure to disclose which documents have been withheld evidences a failure to comply with FRCP 34(b)(2)(c). Defendants should be ordered to produce all responsive documents and ordered to produce the "personal" information that was or which it intended to withhold from production, as there is a protective order in place in this case.

7. <u>All documents sent by either Defendant to Plaintiff, or received by either Defendant from Plaintiff after February 11, 2016 (RFP 21).</u>

This request covers the production of responsive information dated after February 11, 2016 – which is the day Plaintiff was terminated. Given that context, there is limited information that could possibly be relevant and responsive to this discovery request such that LCCA's boilerplate objections and claims that it cannot respond because the request specifies only "the entity" as opposed to "individuals" should be rejected. So should its arbitrary limitation to providing only responsive email in light of the critical nature of fax communication at issue in this case (see also Topic 8, below). Further, as LCCA's response also implies the existence of responsive undisclosed material, the response is not compliant with FRCP 34(b)(2)(c) and, thus, Defendants should be ordered to produce the responsive information.

8. <u>Fax logs during the time that Plaintiff faxed a revocation of a settlement and release agreement that Defendants claim was not ever received (RFP 26).</u>

One of LCCA's defenses in this case is that Plaintiff signed, but did not timely revoke a waiver of claims as part of a separation agreement. However, Plaintiff has evidence that she did timely fax such a revocation, and Defendants have been provided the fax confirmation sheet. Defendant has objected to providing the fax logs for the fax number to which Plaintiff submitted her revocation of her separation agreement claiming **irrelevance** and undue burden and has, for months now, stood on its claim that it is looking for the information. As of this time, LCCA has neither supplemented its response nor withdrawn its objections to this request.

9. <u>For the past five years, for Kansas and Missouri, documents reflecting deficiencies placed upon the licensure of an administrator, or that of a risk of losing licensure, or a risk of suspension as to the license of an administrator for an LCCA facility (RFP 27).</u>

Plaintiff expects Defendants to raise an issue as to Plaintiff having suffered sanctions and/or was at risk of sanctions being issued regarding her license to administer residential care facilities in Kansas. In order to respond to such allegations, Plaintiff seeks, and should be entitled to discover those documents showing situations in which other employees may have had similar sanctions or threats to their administrator's license, but who were not terminated or disciplined. As such, Plaintiff has requested such records and has agreed to limit the geographic scope of Request 27 to Kansas and Missouri, and to limit the temporal scope to five years. To date, Plaintiff has received what appears to be some limited documents from the state of Kansas, but has not received any representations from Defendants as to the scope of its production on this topic, nor does it appear Defendants have completed the production as to responsive instances in Missouri. Per the rules, however, Plaintiff is entitled to clear representations as to what Defendants have, and have not produced, in response to RFP 27 regarding similarly situated employees. *See Weahkee v. Norton*, 621 F.2d 1080, 1082–1083 (10th Cir.1980) (plaintiff entitled to discover personnel files of employees who plaintiff claims were hired or promoted in discriminatory preference over

10

him); *Velasquez v. Frontier Med. Inc.*, 229 F.R.D. 197, 200-01 (D.N.M. 2005) (personnel file of similarly situated coworkers allowed because the records "could lead to information concerning disparate treatment of Hispanic female employees or other patterns of discriminatory acts or omissions that Frontier's management committed").

10. <u>Yosick's waived responses to discovery.</u>

Plaintiff's discovery requests were sent to *both* Defendants in this case, but to date, Defendant Yosick has never provided responses or objections to Plaintiff's First Requests for Production. The Court should find Yosick's objections are waived and require her to produce all responsive documents.

### B.     Plaintiff's Second Requests for Production.

Plaintiff is required by Court Order to, today, submit a Motion to Compel as to her Second Requests for Production. In order to ensure Defendants did not have any supplemental documents, or an intent to withdraw objections, Plaintiff's counsel sent a short email to defense counsel outlining the issues Plaintiff intended to raise as to her Second Requests for Production. (See **Exhibit D**). Though there had not been specific conferral efforts prior to that email, the issues are the same, if not substantially similar to those at issue in Plaintiff's First Requests for Production. As with Plaintiff's First Requests for Production, it has been two months since defense counsel has taken any action to comply with their obligations under the Federal Rules with regard to supplementing information and despite the recent orders by the Court granting Plaintiff her right to file a motion to compel, defense counsel has not even responded to Plaintiff's counsel's email as to the Second Requests for Production.

1. <u>Request seeking information from Yosick's Facebook account that discusses, relates or refers to allegations in the Complaint or Defendants' defenses (Second RFP 1) and request seeking information from Jaimie Corradini's Facebook account that discusses, relates or refers to allegations in the Complaint or Defendant's defenses (Second RFP 2).</u>

11

Plaintiff has produced extensive responsive Facebook material from her own Facebook account and has asked for similar information from Defendant Yosick (with whom Plaintiff had Facebook communications) which relates to Plaintiff's claims or Defendants' defenses. The response to this request by Defendants indicates it is producing only information about Plaintiff, but makes no representation about producing information about Plaintiff's claims or Defendants' defenses. Defendants should produce all such responsive documents and clearly state, which documents it is not producing or is withholding based on their objections.[3]

Similarly, as to responsive information from Human Resources employee, Corradini, Plaintiff had relevant communications via Facebook with Corradini and insofar as information about Plaintiff's claims or Defendants' defenses exist in Corradini's Facebook account, that information should be produced, and otherwise to the extent information is being withheld, it too should be disclosed.

The Court should order Defendants to provide complete and proper responses to these discovery requests.

2.  <u>Email communication of Corradini that discusses Defendant Yosick or Plaintiff Hall. (Second RFP 6).</u>

As discussed above, Corradini is a Human Resources employee of Defendant LCCA that was closely involved with and communicated with Plaintiff and Defendant Yosick regarding events surrounding Plaintiff's termination. LCCA has interposed objections and limited the date range of the request (a limitation Plaintiff is agreeable to) but is limiting the search to documents about Plaintiff Hall. Defendant LCCA has also explained that it has additional responsive documents that it is not producing, however, it does not describe those documents. As referenced above, the federal rules require parties to properly disclose documents withheld subject to objections.

---

[3] Plaintiff is not pursuing the responsive Facebook material as to Yosick's job search.

12

Defendant has not done that here. The Court should order Defendant LCCA to provide complete and proper responses to this discovery request.

        Respectfully Submitted,

**REAVEY LAW LLC**

By: /s/Kevin C. Koc            .
    Patrick G. Reavey KS# 17291
    Kevin C. Koc KS# 24953
    Livestock Exchange Building
    1600 Genessee Suite 303
    Kansas City, MO 64102
    Ph: 816.474.6300
    Fax: 816.474.6302
    Email: preavey@reaveylaw.com
    Email: kkoc@reaveylaw.com
    Website: www.reaveylaw.com

### CERTIFICATE OF SERVICE

    I hereby certify that on this 12th Day of January, 2018, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Anthony J. Romano, #13486
Uzo N. Nwonwu, #23492
LITTLER MENDELSON, P.C.
1201 Walnut, Suite 1450
Kansas City, MO 64106
Telephone: 816.627.4400
Facsimile: 816.627.4444
aromano@littler.com
unwonwu@littler.com
ATTORNEYS FOR DEFENDANT

        /s/ Kevin C. Koc        .