## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

PAMELA HALL,                          )
                                      )
                    Plaintiff,        )
                                      )
v.                                    )        Case No.: 16-2729-JTM-KGG
                                      )
LIFE CARE CENTERS OF                  )
AMERICA, INC., *et al*.,              )
                                      )
                    Defendant.        )
_____)

## MEMORANDUM & ORDER ON MOTION TO COMPEL

In the present action, Plaintiff Pamela Hall alleges she was subject to employment discrimination and retaliation in violation of the Family Medical and Leave Act, the Americans with Disabilities Act, and the Age Discrimination in Employment Act.  (Doc. 1.)  Plaintiff contends she was forced to terminate her employment, while Defendants Life Care Centers of America ("Defendant LCCA" or "LCCA") and Michelle Yosick ("Defendant Yosick" or "Yosick") contend Plaintiff did so voluntarily.

Now before the Court is Plaintiff's Motion to Enforce Discovery.  (Doc. 58.) Having reviewed the submissions of the parties, Plaintiff's motion is **GRANTED in part** and **DENIED in part** as more fully set forth below.

## ANALYSIS

1

## I.    Legal Standards.

Fed.R.Civ.P. 26(b) states that

> [p]arties may obtain discovery regarding any
> nonprivileged matter that is relevant to any party's claim
> or defense and proportional to the needs of the case,
> considering the importance of the issues at state in the
> action, the amount in controversy, the parties' relative
> access to relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and
> whether the burden or expense of the proposed discovery
> outweighs its likely benefit.  Information within this
> scope of discovery need not be admissible in evidence to
> be discoverable.

As such, the requested information must be nonprivileged, relevant, and

proportional to the needs of the case to be discoverable.  *Holick v. Burkhart*, No.

16-1188-JTM-KGG, 2018 WL 372440, at *2 (D. Kan. Jan. 11, 2018).

## II.    Plaintiff's First Document Requests.

### A.    Personnel Files (Requests for Production Nos. 2 and 7).

Request No. 2 seeks "[p]ersonnel files . . . of any employee of LCCA who

gave any input . . . into, or participated in, Plaintiff s termination, and/or the

decision to terminate and/or offering Plaintiff a severance agreement."  (Doc. 58-2,

at 3.)  Request No. 7 asks for personnel files of any of Defendant LCCA's

employees "who had supervisory authority over Plaintiff at the time Plaintiff's

employment ended."  (*Id*., at 4.)

Defendants object that the requests are overly broad and unduly burdensome because they are not "limited to the claims and defenses in this action" (as to Request No. 2) and not "specific as to what counts as 'supervisory authority'" (as to Request No. 7). (*Id.*, at 3, 4.) Defendants continue that the requests are vague and ambiguous because they do not "identify the file sought with any specificity" (as to Request No. 2) and seek irrelevant documents that are non-proportional to the needs of the case (as to Request No. 7). (*Id.*) Finally, Defendants argue that the requests seek "the confidential personnel files of nonparties to this action who have not consented to disclosure." (*Id.*) That stated, Defendants identify Michelle Yosick as Plaintiff's supervisor and agrees to produce her personnel file "other than her personal information." (*Id.*)

The court **overrules** the ambiguity objections. Employers may maintain different documents in a "personnel file," or may not maintain a collection of documents that meet that definition at all. Defendants, however, have agreed to produce Ms. Yosick's "personnel file," so apparently Defendants maintain such.[1] The verbiage of these requests, at least in this case, is not vague and ambiguous. Terms such as "personnel file" are generally accepted in the realm of employment

---

[1] The Court notes that the file of Ms. Yosick is being produced "other than her personal information." Defendants' supplemental discovery responses indicate that such personal information redacted in this instance is "limited to" Ms. Yosick's "social security number, her date of birth, her address, and her telephone numbers." (Doc. 63, at 9.)

law.  As to Request No. 7, the term "supervisory authority" is sufficiently self-explanatory.

The Court's analysis thus turns to whether the files at issue are relevant and proportional to the case (appropriately "limited to the claims and defenses in this action").  Plaintiff is correct that courts in this District generally hold that an individual's employment records are relevant and discoverable "if the individual (1) is alleged to have engaged in the retaliation or discrimination at issue, (2) is alleged to have played an important role in the decision or incident that gives rise to the lawsuit, or (3) is a key witness to the events giving rise to the lawsuit." ***White v. Graceland Coll. Ctr. For Prof'l Dev. & Lifelong Learning, Inc.***, 586 F. Supp. 2d 1250, 1259 (D. Kan. 2008) (citations omitted).

Plaintiff states that the "decision makers as to Plaintiff's termination" are Defendant Yosick, Defendant LCCA's in-house counsel (who was involved in drafting a severance and release agreement) and Division Vice President Eric Doerhoff."  (Doc. 58, at 4.)  Plaintiff also contends that she is entitled to the personnel file of Human Resources employee Jamie Corradini, who, according to Plaintiff, "provided information to management about Plaintiff and her medical leave and, according to defense counsel, 'approved' Plaintiff's termination. (*Id.*)

Defendants concur with the ***White v. Graceland*** holding.  (*See* Doc. 63, at 5.)  Even so, they do not agree that individuals besides Yosick meet the criteria

4

outlined in **White**.  Defendants have thus produced only Yosick's personnel file, "explain[ing] that Yosick, with approval from her Division Manager and HR, met with Plaintiff to discuss her resignation."  (Doc. 63, at 5.)  Defendants argue that Plaintiff's justification for production of the personnel file of in-house counsel is "insufficient."  (Doc. 63, at 5.)  Defendants also contend that "Doerhoff's role as Yosick's supervisor who approved seeking Plaintiff's resignation does not make his personnel file discoverable" and that Corradini's personnel file is not "discoverable merely because she provided Yosick information she received from Plaintiff regarding Plaintiff not returning to work."  (*Id*., at 6.)

Plaintiff replies that

> defense counsel . . . specifically indicated that Jamie Corridini [sic] and Eric Doerhoff 'approved' Plaintiff's termination.  Moreover, it was Corridini [sic] and Doerhoff (a day or two after learning Plaintiff was requesting FMLA leave for a two week period) who consulted with one another about Plaintiff's absence from work (because of FMLA qualifying medical conditions, that both of them knew about) constituting "job abandonment".  Also, as indicated in [Defendant's document production], Annette Sharp, Kelley Falcon, Theodore Lu, *and others* were involved in the events surrounding Plaintiff's termination, her FMLA, and the Separation Agreement (in fact, Lu prepared it).  All these people are responsive to Plaintiff's RFP 2 and, consequently, their unredacted personnel files should be produced.

(Doc. 72, at 11-12 (emphasis in original).)

The Court finds that Plaintiff has sufficiently established that Doerhoff and Corradini were either engaged in the retaliation/discrimination, played an important role in the decision, or are key witnesses to the events surrounding Plaintiff's termination/severance. As such, their personnel files are discoverable. Plaintiff has not sufficiently established the involvement of "Annette Sharp, Kelley Falcon, Theodore Lu, *and others*" as key witnesses or decisionmakers, thus their personnel files are not discoverable.

As to documents responsive to Requests Nos. 2 and 7, this Court has routinely held that a document being "confidential" does not equate to being privileged or otherwise shielded from discovery.

> It is well settled that confidentiality does not act as a bar to discovery and is not grounds to withhold documents or information from discovery. 'A concern for protecting confidentiality does not equate to privilege.' While a confidentiality objection may be appropriate when a party seeks a protective order limiting the parties' use or disclosure of confidential information, it is generally not a valid objection to withholding discovery altogether.

*High Point SARL v. Sprint Nextel Corp.*, No. 09-2269-CM-DJW, 2011 WL 4008009, at *1 (D. Kan. Sept. 9, 2011) (citations and footnotes omitted); *AKH v. Universal Underwriters Ins. Co.*, No. 13-2003-JAR-KGG, 2017 WL 5465240, at *15 (D. Kan. Nov. 14, 2017).

Defendants' objections to Requests Nos. 2 and 7 are **overruled**. The Court **GRANTS** this portion of Plaintiff's Motion as to the personnel files of Eric

Doerhoff and Jaimie Corradini, in addition to that Michelle Yosick, produced

previously.  Defendant is instructed to provide a supplemental response, without

objection, to Plaintiff **within thirty (30) days of the date of this Order**.

    **B.**    **Electronic Devices and Documents (Requests Nos. 8, 28, 30, 31, 34,
35, 38, and 40).**

These requests seek documents and electronic communications under

specified search terms, time frames, devices, and document custodians.  (*See* Doc.

58-2, at 5, 12-15)  For instance, Request No. 8 seeks such documents from

computers or devices used for Defendant LCCA's business by Annette Sharp,

Jaimie Corradini, Michelle Yosick,

> and/or any other employee of LCCA [but only employees
> who gave input into (factual, legal, Human Resources, or
> otherwise) and/or made decisions that: (i) Plaintiff s
> employment should be terminated, (ii) that Plaintiff s job
> performance was not meeting the expectations of either
> of the Defendants, (iii) that Plaintiff should be offered a
> severance agreement in return for her resignation, and/or
> (iv) employees who were interviewed or questioned
> about facts regarding items (i) through (iii)].

(*Id*., at 5.)  The remaining requests in this section seek more specific categories of

documents that are, most likely, subsumed in the documents responsive to Request

No. 8 (*e.g.* documents discussing Plaintiff's eligibility or request for leave (Nos.

30, 38), her medical condition (No. 35), Plaintiff's desire to resign (No. 40), etc.).

Plaintiff contends that

> [a]fter conferring and agreeing to limit email searches to
> specific email accounts (rather than the entire server),
> LCCA moved forward with searches (presumably using
> Plaintiff's search terms and date parameters) but without
> complete agreement as to what custodian and devices
> would be searched.  Although Plaintiff has been told that
> LCCA's searches for ESI located 20,000 documents
> (which have been under review for months now),
> Plaintiff has no specific information regarding what
> devices and custodians have been searched.

(Doc. 58, at 6.)  Plaintiff argues that "[a]t a minimum, Defendants should be

compelled to respond to the requests, and indicate what search terms were used,

and what custodians and devices were searched, and produce responsive

documents."  (*Id.*, at 7.)

Defendants respond that

> [f]ollowing discovery conferences with counsel for
> Plaintiff regarding search terms, through LCCA's IT
> department, conducted email searches of the archived
> and current email accounts of Annette Sharp, Jaimie
> Corradini, Michelle Yosick, and Plaintiff for the
> identified time period using the very broad search terms
> 'Pam,' 'Pamela,' and 'Hall.'  Defendants have since been
> reviewing the resulting documents and intend to produce
> non-privileged documents resulting from those terms.

(Doc. 63, at 6.)  Defendants argue that "this expansive and overly broad search"

has "more than satisfied their discovery obligation in undertaking this email

search."  (*Id.*)  Defendants continue that

> Plaintiff also claims to seek electronic searches of the
> personal cell phones and social media accounts of Sharp,
> Corradini, and Yosick.  Yet, Defendants have produced

> all responsive information from the Facebook of
> Corradini and Yosick, and from Yosick's phone, and
> have no responsive information for Sharp. Plaintiff's
> gripe appears to be that the search was not conducted
> 'electronically' in some manner. The manner of the
> search notwithstanding, Defendants have produced all
> responsive texts and social media messages as requested.

(*Id*., at 7.) Plaintiff replies, however, that

> Defendants limited their searches to emails, did not
> search all responsive devices, and failed to include
> important limitations in their searches, resulting in
> thousands and thousands of non-responsive and
> irrelevant documents. Moreover, the only custodians
> searched were Annette Sharp, Jaimie Corradini, and
> Michelle Yosick (Defendants' Supplemental Response to
> RFP 8, Ex. 3 at p. 7), leaving out other important
> custodians [responsive to RFP 8] involved in the events
> connected with Plaintiff's termination, her FMLA leave,
> and the Separation Agreement (e.g. Doerhoff, Falcon,
> and Lu).

(Doc. 72, at 12.)

The Court finds that the searches conducted by Defendants are sufficient as to Requests Nos. 8, 28, and 30. The individuals whose communications were searched appear to the Court to be the most directly involved of Defendant LCCA's employees. Further, given the proportionality limits on discovery, the additional searches requested by Plaintiff dangerously approach the level of a fishing expedition. This portion of Plaintiff's motion is **DENIED**.

Requests Nos. 31, 34, 35, 38, and 40, however, are unambiguously worded discovery requests to which Defendants are instructed to respond. There is no

need for limitations or parameters to be applied to the search techniques for these requests.  This portion of Plaintiff's motion is **GRANTED**.  Defendants are ordered to provide Plaintiff with responsive documents regarding communications Yosick had regarding Plaintiff (Request No. 31), communications from Plaintiff and/or her physician regarding her medical conditions (No. 34, 35), communications between Annette Sharp and Jaimie Corradini regarding Plaintiff's FMLA request (No. 38), and communications between Sharp, Corradini, and Yosick regarding Plaintiff's "desire to resign her employment" (No. 40).  If documents responsive to Request No. 31 are being withheld on the basis of the attorney-client privilege and/or work product, Defendants are instructed to provide a privilege log compliant with the requirements of courts in this District.  *See Rittgers v. Hale*, No. 17-4019-SAC-KGG, 2018 WL 338218, at *5 (D. Kan. Jan. 9, 2018) (citation omitted).

### C.    Policy Manuals and Handbooks Applicable to Defendant's HR Department (Request No. 15).

Request No. 15 seeks "all handbooks, manuals, and policies applicable to, and/or used by, any member of LCCA's Human Resources Department during the last 5 years and as part of their job duties for LCCA."  (Doc. 58-2, at 7.) Defendants object that the use of "applicable to, and/or used by, any member of LCCA's Human Resources Department" is vague and ambiguous to the degree that it "cannot reasonably determine the universe of documents that would be

10

responsive to a reasonable interpretation of this request." (*Id*.) The Court does not agree. The language used in this request is facially unambiguous. This objection is **overruled**.

Defendants also object that the request is overly broad and unduly burdensome "as it is not sufficiently limited in scope or subject matter," making the requests irrelevant and not proportional to the case. (*Id*.) Defendants indicate, however, that LCCA will produce "any documents in use during Plaintiff's employment, reflecting written Human Resources policies or training documents – separate from the employee hand book, which [Defendant] has already agreed to produce – that pertain to FMLA leave and discrimination." (*Id*.)

Plaintiff contends that corporations often have "manuals and policies that are specialized for use by their human resources professionals and include a great deal of relevant information, such as performance management, statements of corporate policies and goals, etc…." (Doc. 58, at 7.) Plaintiff argues that

> to the extent LCCA did not follow its own internal policies or guidelines regarding matters raised as part of this suit, this would be highly relevant and almost certainly admissible evidence in Plaintiff's case. But LCCA's discovery response is limited to specific policies to the exclusion of, presumably, other described and non-specified policy material.

(*Id*.) The Court agrees. The Court **overrules** Defendant's attempt to limit the scope of Plaintiff's Request No. 15 to policies only involving FMLA leave and

discrimination.  The Court **GRANTS** Plaintiff's motion as to Request No. 15.

Defendant is instructed to provide such a supplemental response, without

objection, to Plaintiff within thirty (30) days of the date of this Order.

### D.    Structured Training (Request No. 16).

Request No. 16 asks for

> all documents distributed as part of . . . structured
> training . . . on disability and/or age discrimination and
> family medical leave received by any LCCA Human
> Resources employees, management employees, or 'other
> employees' [but 'other employees' shall mean only those
> employees who gave input into (factual, legal, Human
> Resources, or otherwise) and/or made decisions that:  (a)
> Plaintiff s employment should be terminated, (b) that
> Plaintiff's job performance was not meeting the
> expectations of either of the Defendants, (c) or that
> Plaintiff should be offered a severance agreement in
> return for her resignation].

(*Id.*, at 8.)

Defendants object that Request No. 16 is overly broad and unduly

burdensome "as it is not sufficiently limited in scope or subject matter," making

the requests irrelevant and not proportional to the case.  (*Id.*, at 7-8.)  Defendant

LCCA states, however, that it will produce "a copy of its employee handbook and

any separate training documents on disability and/or age discrimination or the

FMLA that were given during Plaintiff's employment."  (*Id.*, at 8.)

Plaintiff argues that she

> has no clarity on the extent to which LCCA has or has
> not responded to [Request No. 16], or to what extent it
> will be responding to this request. The way the response
> is written, it appears that the information will be carefully
> sifted and segmented such that only certain documents
> from within the training will be provided rather than the
> full context of the training.  Plaintiff believes it is
> inappropriate to sift such material because it removes
> contextual information and ostensibly related training.

(*Id*., at 8.)  Although the Court does not agree with Defendants' *sua sponte* decision to limit the scope of Plaintiff's discovery request, Defendants attest that "LCCA has produced an FMLA training presentation responsive to this request and has no additional responsive documents to produce."  (Doc. 63, at 8.) Defendants cannot be compelled to produce documents they do not possess or that do not exist.  The Court thus **DENIES** Plaintiff's motion as to Request No. 16.

### E.    Separation Agreement (Request No. 18).

This request seeks "[t]he native versions of all drafts of the Separation Agreement provided to Plaintiff by Michelle Yosick, as well as the native version of the Separation Agreement provided to Plaintiff by Michelle Yosick."  (Doc. 58-2, at 8.)  Defendants object that this request seeks information protected by the attorney-client privilege and/or work product doctrine.  (*Id*., at 8-9.)  The Court agrees with Plaintiff that the documents would not be protected by the work product doctrine as they were not prepared in anticipation of litigation.  ***Jones v. OfficeMax No. Am., Inc.***, No. 17-1219-JTM-KGG, 2018 WL 836293, at *2 (D.

Kan. Feb. 13, 2018).  Plaintiff continues, however, that if the documents are being withheld on the basis of the attorney-client privilege, they should be included in a privilege log, which would include "[t]he timeline of the creation of the separation agreement . . . ." (Doc. 58, at 8.)  The Court agrees that documents withheld on the basis of privilege should be included in a privilege log.

Defendants also object, however, that the request "exceed[s] the scope of the parties' agreement and/or the Court's order regarding production formats."  (Doc. 58-2, at 8.)  Defendants refer to the initial Scheduling Order in this case, which states that native file version documents[2] shall only be produced upon a specific need and after the parties have conferred in good faith.  (Doc. 19, at 5.) Defendants argue that Plaintiff "has not set out any reason for requesting the natives and instead focuses her argument solely on the applicability of privilege." (Doc. 63, at 8.)  Plaintiff's reply is silent on the issue and the Court agrees that she has not made a sufficient showing to compel production of the natives.  This portion of Plaintiff's motion is **DENIED**.

### F.    Files Maintained on Defendant Yosick (Request No. 20).

This request asks for "[a]ny personnel, complaint, or investigation files maintained by any of the Defendants on Michelle Yosick."  (Doc. 58-2, at 9.)

---

[2]  "Native file" documents are those maintained in their original, electronic format as opposed to hard copies, typically containing electronically stored information ("ESI").

Defendants object that the request is overly broad and unduly burdensome "as it is not limited to the claims and defenses in this action," thus it "seeks documents which are not at issue, not relevant, and not proportional to the claims at issue in this action." (*Id.*) The Court cannot imagine that the files maintained regarding Ms. Yosick are so voluminous as to make their production "unduly burdensome." This objection is **overruled**.

Defendants attest that they have "informed Plaintiff that they have produced all documents responsive to this request." (Doc. 63, at 9.) In addition, Defendants have supplemented their discovery requests and specifically state that they do not "and did not maintain any files on Yosick that have not been produced." (*Id.*) Plaintiff's reply is silent on this issue. This portion of Plaintiff's motion is **DENIED**.

### G.    Documents Sent Between Parties (Request No. 21).

This request seeks "[a]ll documents either of the Defendants sent to, or received from, Plaintiff following the February 11, 2016[,] meeting between Michelle Yosick and Plaintiff . . . ." (Doc. 58-2, at 10.) Defendants object that the documents are "equally and/or readily available to Plaintiff." The Court **overrules** this objection. Plaintiff is within her rights to discover which responsive documents are in Defendants' possession.

Defendants also object that this request "seeks documents sent to an entity, and not anyone specifically employed at [Defendant]." (*Id.*) Defendants state that because "Plaintiff is seeking communications to and from Plaintiff and an entity, Defendants appropriately limited the scope of its search to communications with management or HR and has no additional documents responsive to this request." (Doc. 63, at 10.) Defendants agree to "produce any additional documents Plaintiff sent to Yosick and/or any member of [Defendant's] management or Human Resources at his or her work email address, which are responsive to this request." (*Id.*)

Plaintiff replies that Defendants have limited the request to "*communications* with Human Resources or a member of management, sent to their email address." (Doc. 72, at 13-14.) Plaintiff states that the request should encompass not just communications, but also "any documents exchanged between Plaintiff and Yosick after February 11, 2016, and includes any communications about the documents exchanged." (*Id.*, at 14.) Plaintiff argues that this would allow Defendants to avoid "having to produce the revocation document Yosick received from Plaintiff via fax (not email), and communications about such revocation among LCCA management and Human Resources employees." (*Id.*)

The Court agrees with Plaintiff and instructs Defendants to expand their search accordingly.  Defendants are instructed to supplement their response **within thirty (30) days** of the date of this Order.

### H.    Fax Logs (Request 26).

This request seeks "all data stored on LCCA's fax machine that is affiliated with LCCA's fax number of 314-569-4177" for the month of February 2016. (Doc. 58-2, at 11.)  Defendants object that the request "seeks data that is not at issue, not relevant, and not proportional to the claims at issue in this action."  (*Id*.) Even so, Defendants responded to the request by stating that Defendant LCCA "has and is continuing to conduct a reasonably diligent search for documents responsive to this request and will supplement in the event it obtains any such responsive documents."  (*Id*.)

Plaintiff states that Defendants have raised the defense that "Plaintiff signed, but did not timely revoke a waiver of claims as part of a separation agreement." (Doc. 58, at 10.)  Plaintiff claims that she "has evidence that she did timely fax such a revocation, and Defendants have been provided the fax confirmation sheet." Plaintiff complains that Defendant LCCA "has, for months now, stood on its claim that it is looking for the information" but, as of the filing of the motion, "has neither supplemented its response nor withdrawn its objections to this request."

Defendants respond that "they are exploring whether there is even a way to obtain fax logs that far back." (Doc. 63, at 10.) Defendant LCCA "has been unable to obtain a call log for the fax machine identified, but is open to suggestions and ideas from Plaintiff as to how this information she seeks in discovery can be obtained." (*Id.*) Again, the Court finds that Defendants cannot be compelled produce documents it does not have.

Plaintiff replies, however, that "Defendants should be ordered to provide the Plaintiff, and the Court, a detailed account of what they have done, and when, to extract responsive data from the fax machine . . . ." (Doc. 72, at 14.) This is not a proper response to a Request for Production. *See* Fed.R.Civ.P. 34. If Plaintiff wants this information, Plaintiff is free to submit an interrogatory pursuant to Fed.R.Civ.P. 33, notice a Rule 30 deposition, or request to inspect the fax machine pursuant to Rule 34. Defendants are reminded of their duty to preserve any such data on the fax machine at issue.

## I. Facility Deficiency Reports (Request No. 27).

Request No. 27 asks for documents from the past five years "reflecting reports of facility deficiencies and/or deficiencies placed or reflected as to the license (nursing or otherwise) of an administrator – as to any LCCA Executive Directors, or other direct reports of Michelle Yosick and which put the

administrator or facility at risk of losing or suspension of licensure from the state."

(Doc. 58-2, at 11.)  Plaintiff explains that she

> expects Defendants to raise an issue as to Plaintiff having
> suffered sanctions and/or was at risk of sanctions being
> issued regarding her license to administer residential care
> facilities in Kansas.  In order to respond to such
> allegations, Plaintiff seeks, and should be entitled to
> discover those documents showing situations in which
> other employees may have had similar sanctions or
> threats to their administrator's license, but who were not
> terminated or disciplined.

(Doc. 58, at 10.)

Defendants object that the request is not temporally limited, thus it "seeks

documents which are not at issue, not relevant, and not proportional to the claims

at issue in this action."  (Doc. 58-2, at 11.)  Defendants agree to "produce copies of

any facility deficiencies for the location at which Plaintiff was employed during

her employment."  (*Id*.)  Plaintiff, however, initially offered to limit the time frame

of the request to five years and the geographical scope to Kansas and Missouri.

(Doc. 58, at 10.)  Defendants have agreed to provide the reports for LCCA's

Kansas locations "given that a facility deficiency would be based on the same

standards if issued in Kansas, as opposed to Plaintiff's attempt to make apples to

oranges comparisons regarding how other states – specifically Missouri – evaluates

and determines deficiencies."  (Doc. 63, at 10.)

Plaintiff informed Defendants that it would be "inappropriate for defense counsel . . . to avoid producing documents for . . . Missouri because [Defendants] knew responsive documents (from a particular facility in Missouri) would support Plaintiff's claim that her licensure issue played no role in her termination, rather her age, disability, and FMLA leave did."  (Doc. 72, at 15.)  Taking issue with Defendants' attempts to limit the response to Kansas, Plaintiff now asks the Court to "enforce the request as written," thus encompassing all of Defendant LCCA's facilities in Kansas, Missouri, and beyond.  (*Id.*)

The Court finds that Plaintiff has sufficiently established the relevance of such documents as to facilities in Kansas and Missouri.  Plaintiff has made no showing, however, as to how reports from facilities in other states would be applicable or relevant to her claims.  The Court is not willing to expand the request beyond Kansas and Missouri simply because "the way Defendants have approached this request" displeases Plaintiff.  The Court **GRANTS** Plaintiff's motion, in part, as to such reports from facilities in Kansas and Missouri over the past five years.

## J.    Alleged Waiver by Yosick.

Plaintiff correctly asserts that her Requests for Production "were sent to both Defendants in this case . . . ."  (Doc. 58, at 11.)  She complains, however, that "to date, Defendant Yosick has never provided responses or objections to Plaintiff's

First Requests for Production." (*Id*.) She argues that the Court "should find Yosick's objections are waived and require her to produce all responsive documents." (*Id*.)

Defendants state that "[d]uring the parties' conference with the Court on September 29, 2017, the Court specifically stated that Yosick could not have been deemed to waive her objections based on Plaintiff's alleged 'technicality.'" (Doc. 63, at 11.) Plaintiff argues that "LCCA is inaccurately attributing feedback from Judge Gale, on an entirely different issue, to the issue of whether Yosick has waived objections by not responding to Plaintiff's requests." (Doc. 72, at 9.)

Regardless of whether the issue was specifically addressed during a telephone conference with the Court some 8 months ago, the Court finds no basis to deem Defendant's Yosick's objections waived. Defendants are represented by the same counsel. The responses to the document requests state they are served on behalf of Defendants LCCA and Yosick "collectively." (Doc. 58-2, at 2.) Defense counsel's signature block on the responses indicates "ATTORNEYS FOR DEFENDANTS." (*Id*., at 16.) This portion of Plaintiff's motion is **DENIED**.

## III.    Plaintiff's Second Document Requests.

### A.    Facebook Information (Second Requests Nos. 1 and 2).

Request No. 1 asks for "all of Defendant Yosick's Facebook communication from between June 1, 2014[,] to the present that discusses, relates to or refers to the

allegations of Plaintiff s complaint, Yosick's defenses . . . ."  (Doc. 58-3, at 2.)

Defendants object that the request seeks documents that are irrelevant and not

proportional to Plaintiff's claims.  (*Id.*)  Defendants have, however, produced

Yosick's Facebook communications regarding Plaintiff.  (*Id.*)

     Plaintiff indicates that she "has produced extensive responsive Facebook

material from her own Facebook account and has asked for similar information

from Defendant Yosick" relating to Plaintiff's or Defendants' defenses.  (*Id.*, at 3.)

Plaintiff is concerned that Defendants indicate they are "producing only

information about Plaintiff, but make no representation about producing

information about Plaintiff's claims or Defendants' defenses."  (Doc. 58, at 12.)

Plaintiff argues that "Defendants should produce all such responsive documents

and clearly state, which documents it is not producing or is withholding based on

their objections."  (*Id.*)

     Request No. 2 seeks the same type of information regarding the Facebook

account of Jaimie Corradini from June 1, 2014, to the present.  (Doc. 58-3, at 3.)

Defendants object that the request seeks documents that are irrelevant and/or not

proportional to the needs of the case.  (Doc. 58-3, at 3.)  Defendants state that they

have "produced Corradini's Facebook communications with or about Plaintiff . . .

which are responsive to this request and will not produce her communications

regarding any additional unspecified Facebook communications requested."  (*Id.*)

Plaintiff contends, however, that she "had relevant communications via Facebook with Corradini and insofar as information about Plaintiff's claims or Defendants' defenses exist in Corradini's Facebook account, that information should be produced, and otherwise to the extent information is being withheld, it too should be disclosed."  (Doc. 58, at 12.)

Defendants respond that they "have produced responsive Facebook data from Yosick and Corradini, to wit, their communications with Plaintiff. Defendants have no additional Facebook data responsive to this request that have [sic] not been produced."  (Doc. 63, at 12.)  Plaintiff replies that "Defendants should be ordered to produce all documents responsive to RFP 2, without objection.  From Defendants' [discovery] response, and response to Plaintiff's motion, it is not clear that Defendants are producing, without objection, all responsive documents."  (Doc. 72, at 16.)  On the contrary, Defendants have clearly stated that they have no additional responsive data.

The Court notes, however, that Defendants' response to Second Request No. 2 states they have "produced Corradini's Facebook *communications with or about Plaintiff. . . .*"  (Doc. 58-3 (emphasis added)) while their brief in opposition indicates that they "have produced responsive Facebook data from Yosick and Corradini, to wit, their *communications with Plaintiff*" (Doc. 63, at 12 (emphasis added)).  Defendants are instructed to confirm to Plaintiff that all communications

*about* Plaintiff responsive to Request No. 2 have been produced.  Plaintiff's motion is otherwise **DENIED** as to Second Requests Nos. 1 and 2.

### B.    Corradini's E-mail Communication (Second Request No. 6).

Request No. 6 seeks "e-mail communication of Jaimie Corradini from September 1, 2014[,] to the date LCCA received formal notice from the EEOC of Plaintiff s filing of a Charge of Discrimination that discusses or refers Pamela Hall or Michelle Yosick."  (Doc. 58-3, at 5.)  Plaintiff describes Corradini as "a Human Resources employee of Defendant LCCA that was closely involved with and communicated with Plaintiff and Defendant Yosick regarding events surrounding Plaintiff's termination."  (Doc. 58, at 12.)

Defendants object that the request is "not appropriately limited to any type of communication and is not sufficiently limited in time," thus seeking information that is irrelevant or not proportional to the needs of the case.  (Doc. 58-3, at 5.)  Defendants respond that any of Corradini's e-mail regarding Ms. Yosick that is "not limited in relation to Plaintiff [has] no bearing on this action."  (*Id.*)  Defendants' response indicates they are "conducting reasonable email searches, using the search terms 'Pam Hall' and 'Pamela Hall' of Corradini's email for the period January 1, 2015 through May 9, 2016 – the date on which [Defendant] received Plaintiff's charge – and will provide non-privileged responsive documents from that search."  (*Id.*)

Plaintiff is concerned that Defendant LCCA has "explained that it has additional responsive documents that it is not producing, however, it does not describe those documents." (Doc. 58, at 12.) Plaintiff argues that "the federal rules require parties to properly disclose documents withheld subject to objections." (*Id*.) Defendants respond that they "will produce responsive emails upon completion of the review for responsive non-privileged documents." (Doc. 63, at 12.) Defendants are instructed to do so **within thirty (30) days** of the date of this Order.

Plaintiff replies, however, that "Defendants have indicated they don't believe email communication of Corradini about Yosick (Plaintiff's supervisor and one of the people who fired her) is relevant unless the email is specifically about Plaintiff." (Doc. 72, at 16.) Plaintiff complains that Defendants "will only search for Corradini emails that are about Plaintiff." (*Id*.) The Court fails to see the relevance of any email of Corradini that is about Yosick but is not also about Plaintiff. Plaintiff has not established the relevance or proportionality of such information. As such, this portion of Plaintiff's motion is **DENIED**.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel (Doc. 58) is **GRANTED in part** and **DENIED in part** as more fully set forth above. All

supplemental responses, including responsive documents, shall be served by

Defendant **within thirty (30) days** of the date of this Order.

IT IS SO ORDERED.

Dated this 27th day of April, 2018, at Wichita, Kansas.

s/ KENNETH G. GALE
HON. KENNETH G. GALE
U.S. MAGISTRATE JUDGE