# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| PAMELA HALL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 16-2729-JTM-KGG |
| | ) |
| LIFE CARE CENTERS OF | ) |
| AMERICA, INC., et al., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM & ORDER ON
## MOTION FOR LEAVE TO AMEND ANSWER

Defendant Lifecare Centers of America (hereinafter "Defendant" or "Defendant LCCA") has filed a motion seeking leave to amend its Answer to add the affirmative defenses of judicial estoppel and release/ ratification. (Doc. 91.) Having reviewed the parties' submissions, the Court **GRANTS in part** and **DENIES in part** Defendant's motion (Doc. 91).

## BACKGROUND

Plaintiff Pamela Hall filed her Complaint on October 25, 2016, alleging violations of the Family Medical and Leave Act, the Americans with Disabilities Act and the Age Discrimination in Employment Act by Defendant LCCA and Defendant Yosick. (Doc. 1.) She alleges she was subject to employment discrimination and retaliation in violation of the Family Medical and Leave Act,

the Americans with Disabilities Act, and the Age Discrimination in Employment Act. (Doc. 1.) She contends she was forced to terminate her employment, while Defendants contend she did so voluntarily. Defendant LCCA filed its Answer on December 30, 2016. (Doc. 9.)

The deadline for parties to move to amend their pleadings expired on May 15, 2017. (Doc. 19.) Defendant received responses to its First Interrogatories from Plaintiff in June 2017, approximately three weeks after the deadline to amend had passed. One of the Interrogatories asked for information regarding Plaintiff's involvement in lawsuits, including bankruptcies. (Doc. 91-1, at 5-6.) Plaintiff listed a bankruptcy filed in the Topeka division of the United States Bankruptcy Court for the District of Kansas, referring Defendant to relevant documents available on PACER. (*Id*., at 6.)

Plaintiff's deposition was not scheduled until nine months later, on March 2, 2018. Defendant contends that it did not review the bankruptcy filings until it began preparation for Plaintiff's deposition. At that time, "Defendants discovered Plaintiff had failed – to date – to disclose the existence of this lawsuit as an asset in her pending bankruptcy. Nor had she (and still has not) moved to add this lawsuit as an asset in her bankruptcy schedules." (Doc. 91, at 2.) Defendant contends that on March 7, 2018, "only eight days after discovering Plaintiff's failure to disclose," it notified Plaintiff of Defendants' "intent to assert a judicial estoppel

defense." (*Id.*, at 2-3.) Defendant also contends that Plaintiff's March 2018 deposition testimony regarding her request for vacation pay as part of her severance provide the basis for Defendant's ratification defense.

The Pretrial Conference in this case was scheduled for March 15, 2018. The parties submitted a draft Pretrial Order in preparation. (Doc. 86-1.) The Court was unable to enter a final Pretrial Order at that time because of "[n]umerous disputes concerning the pleadings in this matter," including various objections raised by Plaintiff to certain affirmative defenses, including defenses "not explicitly raised" in Defendants' Answers. (*See* Doc. 86, at 1-2.) Defendant was ordered to file a motion with this Court addressing certain issues relating to these disputed defenses. (*Id.*)

Approximately two weeks later – and approximately a month after Plaintiff's deposition – Defendant LCCA filed the present motion seeking leave to amend its Answer to add the affirmative defenses of judicial estoppel and release and ratification. (Doc. 91.) Defendant contends the requested relief is "warranted because the factual basis for asserting the . . . defenses arose only recently and Plaintiff would not be unduly prejudiced by their inclusion at this stage of litigation." (Doc. 91, at 1.) Defendant also argues that "standing is a non-waivable matter of subject-matter jurisdiction, not an affirmative defense." (*Id.*) Finally, Defendant argues that the affirmative defense of after-acquired evidence was

asserted in its initial Answer (*Id.*, at 2.) Because the deadline for parties to amend their pleadings expired more than a year ago, Defendant brings the present motion as a motion to amend pursuant to Fed.R.Civ.P. 15(a) as well as a motion to modify the Scheduling Order pursuant to Fed.R.Civ.P. 16(b)(4).

## ANALYSIS

I.  **Estoppel and Release/Ratification.**

   A.  **Rule 16 Analysis.**

Rule 16(b)(4) mandates that "[a] schedule may be modified only for good cause and with the judge's consent."

> To establish 'good cause' the moving party must show that the scheduling order's deadline could not have been met with diligence. ***Parker v. Central Kansas Medical Center***, 178 F.Supp.2d 1205, 1210 (D.Kan.2001); ***Denmon v. Runyon***, 151 F.R.D. 404, 407 (D.Kan.1993). 'This rule gives trial courts 'wide latitude in entering scheduling orders,' and modifications to such orders are reviewed for abuse of discretion.' ***In re Daviscourt***, 353 B.R. 674, (B.A.P. 10th Cir.2006) (citing ***Burks v. Okla. Publ'g Co.***, 81 F.3d 975, 978-79 (10th Cir.1996)).

***Grieg v. Botros***, No. 08-1181-EFM-KGG, 2010 WL 3270102, at *3 (D.Kan. Aug. 12, 2010). It is well-established in this District that motions to modify a scheduling order focus "on the diligence of the party seeking to modify the scheduling order." *Id.* (citing ***Leviton Mfg. Co., Inc. v. Nicor, Inc.***, 245 F.R.D. 524, 528 (D.N.M.2007) (internal citations omitted)).

Defendant argues that it

> only recently discovered the facts necessary to support estoppel and release/ratification defenses. Because the deadline to amend pleadings passed well before the parties first exchanged discovery responses, and certainly before depositions took place, Life Care could not have raised the defenses in its initial pleading or before the deadline for filing motions to amend.

(Doc. 91, at 6.)

### B. Estoppel.

Defendant contends that the affirmative defense of estoppel is based on information gleaned from Plaintiff's discovery responses and her subsequent deposition testimony, all of which occurred after the deadline for Motions to Amend had expired. Considering Plaintiff timely responded to Defendant's Interrogatories, Defendant had access to the information regarding Plaintiff's bankruptcy no later than June 2017 – some nine months before filing the present motion. Although the responses were received after the deadline for motions to amend, Defendant does not have an adequate explanation for why it took an additional nine months to glean this information from Plaintiff's discovery responses and was unable to file the motion in a more-timely, albeit post-deadline, manner.

Defendant states that "it obtained the factual basis necessary to assert" these affirmative defenses "[o]nce [it] had the opportunity to dig into Plaintiff's discovery responses and take her deposition . . . ." (Doc. 104, at 2.) The Court has

been presented with no valid reason why Defendant didn't "have the opportunity to dig into Plaintiff's discovery responses" in the nine months it had the responses prior to the deposition.

Further, it appears that Defendant was aware of the bankruptcy well before it even served the Interrogatories in question.

> Defendants were aware of the bankruptcy long before they terminated Plaintiff in February of 2016 because Plaintiff filed her bankruptcy back in 2015. The bankruptcy docket entries Defendants point to as being reviewed by them as part of preparing for Plaintiff's deposition show LCCA's corporate office was served with three different bankruptcy court orders from Plaintiff's bankruptcy case, one on June 26, 2015, another on July 26, 2015, and another on April 8, 2016. (See Orders, Exhibit A). From these Orders, it can be seen that LCCA was under court order to deduct the Chapter 13 bankruptcy payments from Plaintiff's paychecks, and it did so for almost a year. And LCCA apparently reached out to the bankruptcy Trustee sometime after Plaintiff was terminated to have the order lifted, which in fact occurred via the Order dated April 8, 2016.

(Doc. 98, at 2-3.) Plaintiff therefore argues that any alleged "good cause" for the amendment proposed by Defendant "clearly cannot rest on lack of knowledge by Defendants as to Plaintiff's bankruptcy filing." (*Id.*, at 3.)

Defendant does not dispute that it was aware of Plaintiff's bankruptcy. Defendant argues, however, that it is incorrect to "equate[s] knowledge of [Plaintiff's] bankruptcy with knowledge of her failure to disclose this lawsuit in

bankruptcy court," which forms the factual basis for her affirmative defense of estoppel. (Doc. 104, at 3.) The Court agrees that these are two distinct concepts.

Defendant continues, however, that it "did not learn of this until it reviewed the entire docket of Plaintiff's bankruptcy case in preparation for her deposition." (*Id*.) Again, however, there is no valid justification for Defendant waiting until it began to prepare for Plaintiff's deposition to review the discovery responses which referenced the bankruptcy docket.

> The focus of the diligence issue under Rule 16(b) is not how quickly counsel moved to amend once he became aware of this information. Rather, the [Defendants] must demonstrate that they could not reasonably have amended their answer prior to the deadline, despite their due diligence. Stated another way, the focus of the issue is whether the information could have been discovered by the defendants, with any diligence, prior to the scheduling deadline.

**Stanich v. Hissong Group, Inc.**, No. 09-143, 2011 WL1560650, at *4 (S.D. Ohio, April 25, 2011). *See also* **Kincaid Coach Lines, Inc. v. Transarctic of North Carolina, Inc.**, No. 17-2388-DDC-KGS, 2018 WL 3156801, at *3 (D.Kan. June 28, 2018) (holding that to establish good cause under Rule 16, "the moving party must show that it could not have met the amendment deadline even if it had acted with due diligence"). "'Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.'" **Ericson v. Landers McLarty Olathe KS, LLC**, No. 17-2087-DDC, 2017 WL 4573309, at *2 (D. Kan. Oct. 13, 2017)

(quoting *Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan. 1995)).

Although Defendant did not receive the information at issue until after the deadline had passed, had Defendant been more diligent in reviewing the discovery responses – which were received within a month of the deadline – Defendant would have become aware of this information and could have filed the present motion in a much timelier manner. Further, considering Defendant was aware of the pending bankruptcy, Defendant need not have waited for Plaintiff's discovery responses to investigate the bankruptcy filings.

The Court thus finds that Defendant has failed to establish good cause to modify the Scheduling Order to add the affirmative defense of estoppel. As such, the Court need not engage in a Rule 15 analysis as to this proposed affirmative defense. This portion of Defendant's motion is **DENIED**.

### C. Release and Ratification.

Defendant contends that it did not become aware of the factual basis for the release/ratification affirmative defense until Plaintiff's deposition.

> Plaintiff's Complaint and Plaintiff's sworn deposition testimony paint two very different pictures of what happened in her February 10, 2016 meeting with Michelle Yosick. In the Complaint, Plaintiff portrays the meeting as one steeped in coercion, during which Yosick thrust a severance agreement at Plaintiff, gave Plaintiff no opportunity to read or bargain over the agreement, and demanded Plaintiff immediately sign it. In her deposition,

> however, Plaintiff was singing a different tune. There, she admitted to negotiating the terms of the agreement, including making a successful request to change her separation date, which earned her significantly more severance money. Plaintiff also admitted she kept the money Life Care paid her pursuant to the agreement Plaintiff claims she revoked.

(Doc. 104, at 5.) Defendant contends that the "concession" it provided regarding Plaintiff's severance – of which it was unaware until Plaintiff's deposition – provides "the factual basis for asserting a release and ratification defense." (*Id*.)

Defendant also contends that the defense is based on the fact that Plaintiff kept the "benefits of her bargain (the money), while attempting to shed the burdens (the release of claims)." (*Id*., at 6.) Although Defendant obviously would have been aware that it paid money to Plaintiff, it argues that it "needed to confirm whether Plaintiff believed that money was hers, or whether she had, perhaps, made an unsuccessful attempt to return it or had set it aside in a form of escrow pending her suit against the company." (*Id*.) Defendant contends that Plaintiff's deposition testimony established that she did not make an effort to return or hold the funds, thus providing Defendant with "a factual basis to assert a release/ratification defense." (*Id*.)

The Court is not persuaded. Defendant LCCA's employee and co-Defendant Michelle Yosick scheduled and attended Plaintiff's separation meeting. Yosick was the person who memorialized – and changed the date of – Plaintiff's

separation documents on behalf of Defendant LCCA.  Defendants Yosick and LCCA are represented by the same counsel.  Defendant LCCA was sufficiently aware of what occurred at the meeting at the time it filed its Answer.  It did not need to depose Plaintiff to glean this information.

The Court is equally unpersuaded by Defendant's argument that it "needed to confirm whether Plaintiff believed that money was hers, or whether she had, perhaps, made an unsuccessful attempt to return it or had set it aside in a form of escrow pending her suit against the company." (*Id*., at 6.)  Defendant LCCA was aware that Plaintiff took the money.  It was aware that the funds direct deposited into Plaintiff's bank account.  This was sufficient information on which Defendant could – and should – have based any potential affirmative defense of release and ratification.

For Defendant to now argue that it could not raise this defense until it had the opportunity to depose Plaintiff months and months later to determine if she had placed that money in an escrow account or had unsuccessfully attempted to return it is nonsensical.  This is particularly true in the context of "the twenty-two separate affirmative defenses included as part of its Answer, many of which are clearly unsupported and have no application to this case." (Doc. 98, at 7.)  The Court agrees with Plaintiff that Defendant was not "cautiously . . . asserting defenses." (*Id*., at 6.)

Defendant has not established good cause to modify the Scheduling Order to add the affirmative defense of ratification/release. This portion of Defendant's Motion (Doc. 91) is **DENIED**. Because Defendant has failed to establish good cause to modify the Scheduling Order pursuant to Fed.R.Civ.P. 16, the Court need not engage in a Rule 15 analysis.

## II.    After-Acquired Evidence.

The proposed Pretrial Order also includes Plaintiff's objection to Defendant raising the affirmative defense of after-acquired evidence. (Doc. 86, at 2, Doc. 86-1, at 14.) It is uncontested that Defendant's Answer included this affirmative defense. (*See* Doc. 9 at 17) ("Plaintiff's claim may be barred, in whole or in part, by the doctrine of after-acquired evidence.").

Plaintiff argues, however, that Defendant's Answer merely stated that her claim "'*may* be barred, in whole or in part, by the doctrine of after acquired evidence.'" (Doc. 98, at 12 (emphasis supplied by Plaintiff).) "In stating the potential defense, LCCA provided no facts or reference to what constitutes the after acquired evidence and – other than just recently (after the discovery deadline) referencing Plaintiff's work history – Defendants still have not disclosed the evidence." (*Id.*) In other words, Plaintiff concedes that the affirmative defense was plead, but argues that it was not *sufficiently* plead.

As Defendant argues, Plaintiff failed to take the opportunity to move to strike the defense. (Doc. 104, at 7 (citing Fed.R.Civ.P. 12(f)).) Further, Plaintiff had adequate opportunity to submit Interrogatories to Defendant and/or depose Defendant's representatives regarding this affirmative defense. Plaintiff points to Defendant's response to Request for Production No. 13, which seeks all documents that support affirmative defenses. (Doc. 98, at 14.) Plaintiff now argues that Defendant's response to this document request, in which Defendant refers Plaintiff to its Rule 26 initial disclosures and other documents, is inadequate. (*Id*., at 13-14.) As Defendant points out, however, Plaintiff did not move to compel a more detailed response to this discovery request and the time to do so has long since expired.

The Court **overrules** Plaintiff's objections to the affirmative defense of after-acquired evidence. This portion of Defendant's motion is **GRANTED**.

## III. Standing.

Plaintiff has also objected to Defendant's assertion of the defense of lack of standing. (Doc. 86, at 2; Doc. 86-1, at 2, 14.) This Court has previously noted that the defense "was not explicitly raised" in Defendant LCCA's Answer or the proposed Answer of Defendant Yosick. (Doc. 86, at 2; Doc. 9; Doc. 78-1.) The undersigned Magistrate Judge previously noted that "[a]n issue is whether this defense is an affirmative defense which is required to be plead under Fed.R.Civ.P.

9 and, thus, would require a motion to amend be filed to add the defense." (Doc. 86, at 2.) This Court thus instructed Defendant to file a Motion to Amend regarding whether standing is an affirmative defense that can be waived and whether a motion to amend out of time is appropriate. (*Id*.)

Defendant argues that "'[a] motion to dismiss for lack of standing implicates the court's subject matter jurisdiction and, therefore, is construed pursuant to Federal Rule of Civil Procedure 12(b)(1).'" (Doc. 91, at 10 (quoting ***Unicredit Bank AG, New York Branch v. Deborah R. Eastman, Inc.***, No. 12-2249-JTM, 2013 WL 237810, at *3 (D. Kan. Jan 22, 2013).) Defendant also correctly states that Courts in this District have held that subject matter jurisdiction cannot be "'forfeited or waived.'" (*Id*., quoting ***Nieberding v. Barrette Outdoor Living, Inc.***, 129 F. Supp. 3d 1236, 1241 (D. Kan. 2015).)

As Plaintiff points out, however, Defendant has confused the issues of standing and real-party-in-interest. (Doc. 98, at 15.)

> The law of standing is almost exclusively concerned with such public law questions as determinations of constitutionality and review of administrative or other governmental action." C. Wright, *The Law of Federal Courts* § 13, at 60 (4th ed. 1983) [hereinafter *Law of Federal Courts*]. The term 'standing,' however, is used loosely in many contexts to denote the party with a right to bring a particular cause of action. This practice leads to much confusion when it is necessary to distinguish between 'standing' in its most technical sense and the concept of real party in interest under Fed.R.Civ.P. 17(a). *See generally* 6 C. Wright & A. Miller, *Federal Practice*

> *and Procedure* § 1542 (1971) [hereinafter 6 *Federal Practice and Procedure*]; 13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3531, at 338–45 & nn.6–8 (2d ed. 1984 & Supp.1989) [hereinafter 13 *Federal Practice and Procedure*]; *Law of Federal Courts* § 13, at 59–60 & § 70, at 452–53 & n. 2. '[S]tanding pertains to suits brought by individuals or groups challenging governmental action which has allegedly prejudiced their interests. On the other hand, the real party in interest question is raised in those much rarer instances between private parties where a plaintiff's interest is not easily discernible.' ***Malamud v. Sinclair Oil Corp.***, 521 F.2d 1142, 1147 (6th Cir.1975) . . . .
>
> Using the term "standing" to designate real-party-in-interest issues tempts courts to apply standing principles outside the context in which they were developed. . . . [S]tanding may implicate the Article III requirement of a 'case or controversy,' an issue of subject matter jurisdiction which cannot be waived. However, failure to timely raise a real-party-in-interest defense operates as a waiver. ***K–B Trucking***, 763 F.2d at 1153 n.2; ***Harris v. Illinois–California Express, Inc.***, 687 F.2d 1361, 1373–74 (10th Cir.1982); 6 *Federal Practice and Procedure* § 1542, at 640 & 642-43. Even if standing jurisprudence is helpful by analogy in resolving real-party-in-interest issues, this does not convert real party in interest into a nonwaivable issue of subject matter jurisdiction.

***Federal Dep. Ins. Corp. v. Bachman***, 894 F.2d 1233, 1235-36 (10th Cir. 1990).

Defendant argues that even if the issue is not properly presented as standing (and thus implicating subject matter jurisdiction), it should be allowed to assert the affirmative defense because it "only recently learned of Plaintiff's failure to disclose this lawsuit to the bankruptcy court." (Doc. 104, at 4.) The Court does not agree. Plaintiff directed Defendant to her bankruptcy filings nine months

before the present motion was filed. Further, as discussed above, Defendant was aware of the bankruptcy filing well before it served the discovery requests on Plaintiff. The fact that Defendant made the choice to ignore Plaintiff's discovery responses and/or investigate the bankruptcy case until it was preparing for Plaintiff's deposition does not establish good cause.

The Court finds that Defendant waived the issue of real-party-in-interest by not including it in Defendant's Answer. Defendant has failed to provide good cause for why it should be allowed to amend the Scheduling Order and add the defense out of time. This portion of Defendant's motion (Doc. 91) is **DENIED**.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Leave to Amend (Doc. 91) be **GRANTED in part** and **DENIED in part** as more fully discussed above.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas, on this 11th day of July, 2018.

 s/Kenneth G. Gale  
KENNETH G. GALE  
United States Magistrate Judge
