## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| PAMELA HALL | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | )   Case No. 2:16-cv-02729- JTM-KGG |
| | ) |
| LIFE CARE CENTERS OF | ) |
| AMERICA, INC. (D/B/A LIFE | ) |
| CARE CENTER OF KANSAS CITY | ) |
| MICHELLE YOSICK | ) |
| | ) |
| Defendants | ) |

## PLAINTIFF'S MOTION FOR THE MAGISTRATE JUDGE TO RECONSIDER HIS JULY 18, 2018 ORDER DENYING PLAINTIFF'S MOTION AS UNTIMELY

Plaintiff, by and through counsel and pursuant to D. Kan. R. 7.3, moves the

Magistrate Judge to reconsider his July 18, 2018 Order (Doc 115) [hereafter "Privilege

Order"] because it is based on clear error and is manifestly unjust to Plaintiff.[1] In support,

Plaintiff states the following:

**A.**     **The Magistrate's finding of "waiver" goes beyond even what Defendants argued in their briefing.**

The Privilege Order begins: "Defendant points out that Plaintiff's motion was filed

beyond the time allowed for discovery motions enumerated by D. Kan. Rule 37.1." (Doc

---

[1] Plaintiff files this Motion with the understanding that her time for seeking review of the Privilege Order from the District Judge is tolled during the pendency of this motion for reconsideration. *See* ***Comeau v. Rupp***, 142 F.R.D. 683, 685 (D. Kan. 1992) ("A fair reading of the federal and local rules should allow the magistrate judge to fully consider, and if requested, reconsider his decisions before a party invokes district court review under Rule 72(a).").

115 at p. 3). But this is not what Defendants argued. Instead [despite their privilege log being served one week before the discovery deadline], they criticized Plaintiff for not **explaining** why she did not file her motion "prior to the close of discovery". (Doc. 96 at p. 1).[2] They then state:

> Plaintiff represented to this Court on March 13, 2018, in an email to chambers, and then again on March 15, 2018, during the parties' Pretrial Conference, that **she planned to file a motion regarding the adequacy of Defendants' privilege log. On that basis, the Court's order continuing the Pretrial Conference reflected that any remaining discovery motions should be filed by April 6, 2018**. The Court did not alleviate, however, the requirements of Local Rules 37.2 regarding the duty to confer prior to filing discovery motions and the timing for filing discovery motions. **The only matter properly before the Court is <u>whether the supplemental privilege log Defendants provided complies with their discovery obligations</u>.**

(Doc. 96 at p. 1) (emphasis added). Then on page 7 of their brief, Defendants further elaborate on their "timing" argument by indicating Plaintiff's "request for ESI searches of Life Care's 'lawyers or legal staff'" … is "beyond the 30 day deadline set forth in Local Rule 37.1(b)." (Doc. 96 at p. 7).

The Magistrate erred in applying Defendants' timing argument to wipe out Plaintiff's entire motion (hereafter "Privilege Motion"), even the part Defendants admitted was "properly before the Court". This was clear error.

**B.** **<u>The conclusion by the Magistrate Judge that  --  prior to January 12, 2018  --  Plaintiff had already waived her right to file the Privilege Motion is clear error</u>.**

By virtue of the Magistrate's prior Orders, entered on December 27, 2017 and January 8, 2018, Plaintiff had until January 12, 2018 to file a motion to compel discovery responsive to her First and Second document requests. (*See* Doc. 55, and Doc. 57). Thus,

---

[2] There is no requirement or rule indicating discovery motions must be filed before the close of discovery.

any analysis or conclusions of untimeliness or waiver (as to Plaintiff's Privilege Motion –

which is exclusively based on objections and withholding of documents related to Plaintiff's

First and Second document requests) prior to that time constitute clear error. (*See* Doc. 115

at pp. 4-6).

C.     **The conclusion by the Magistrate Judge that  --  prior to April 27, 2018  --
       Plaintiff had already waived her right to file the Privilege Motion is clear error.**

       On January 12, 2018 (in compliance with the January 12, 2018 motion to compel

deadline authorized by Doc. 57), Plaintiff filed her motion to compel (Doc. 58). Within that

motion, and the Reply in support (Doc. 72), Plaintiff presented to the Court that Defendants

had not yet provided a privilege log and asked the Court for assistance:

> Plaintiff's records show that the last time Defendants provided any discovery
> was in late October 2017, but there is a substantial amount of information still
> not produced. Morevover, Defendant Yosick has yet to file any responses or
> objections *at all* as to Plaintiff's First Requests for Production. **And no
> privilege log has been served**, and none of the responses to Plaintiff's
> document requests indicate what documents are responsive to what requests.
> At this point, Defendants should be compelled to produce updated responses
> referencing what documents are responsive to what requests, **and deemed to
> have waived any privilege objections**.

(Doc. 58 at p. 2) (emphasis added).

> While LCCA presumably contends drafts of the separation agreement reflect
> attorney-client privilege, **it has not provided a privilege log** delineating the
> communication it claims as privileged. The timeline of the creation of the
> separation agreement, which would be set out in a privilege log, is relevant
> also to the dispute between the parties as to whether Plaintiff voluntarily quit
> or was fired.

(Doc. 58 at p. 8) (emphasis added).

       *4.     Failure of either Defendant to provide a privilege log.*

       Despite asserting privilege objections and indicating only "non-
privileged" documents will be produced (*See* Responses to Plaintiff's RFPs 5,

6, 8, 9, 11, and 23), **Defendants have yet to provide a privilege log to indicate what documents have been withheld based on privilege.** With discovery ending in a little over one week, Defendants apparently believe it is okay that they only provide a privilege log after discovery is over. This is ridiculous as the whole purpose of a privilege log is to enable the opposing party to know the extent, and subject matter, of documents that have been withheld.

   **It is indisputable that numerous documents maintained by Defendants have not been produced or logged by Defendants because Defendants believe they are in the realm of privileged documents.** For example, Plaintiff has requested documents related to investigations about other LCCA employees who made a claim or complaint of discrimination or retaliation based on age, disability, or FMLA leave. Plaintiff has also requested documents surrounding the Separation Agreement presented to Plaintiff, which was prepared by LCCA's in-house counsel long before Plaintiff filed with EEOC. Despite the existence of these documents, Defendants have simply withheld them, again indicating that their review of the 20,000-page production is a sufficient excuse for not doing it sooner. It isn't, and Defendants' failure has caused prejudice to Plaintiff.

   It is clear in this District what is required of a party who wishes to withhold responsive documents that they believe are privileged. **Defendants have delayed doing this and, at this point in time (a little over a week before the discovery deadline), allowing Defendants to correct their failure will significantly prejudice Plaintiff given there is no time for discovery or discovery motions, and Plaintiff will have already taken depositions of those involved in her termination. Accordingly, the Court should immediately order that Defendants have waived any objections based on privilege, and order that Defendants produce all documents responsive to Plaintiff's document requests, regardless of whether they were prepared by attorneys or represent communications by or with an attorney.**

(Doc. 72 at pp. 9-10).[3]

   In addition to the privilege log issue being brought to the Court's attention via Doc.

58, Doc. 72, and Doc. 75, on September 29, 2017 (less than 30 days after responses by

Defendants were served), undersigned counsel and defense counsel had a telephone

---

[3] This same content appeared in Doc. 75, which was filed by the Clerk as a separate motion for sanctions against Defendants.

conference with the Magistrate Judge.[4] Prior to that call, Plaintiff submitted a letter to the Magistrate and defense counsel. (*See* Doc. 115 at p. 2; *See also,* **Exhibit A**). The letter and conference both included discussion of Defendants' impropriety of making privileged objections, but no privilege log accompanying the objections.[5]

With the issue of Defendants' failure to provide a privilege log squarely before the Court, there was nothing more for Plaintiff to do, other than await the Court's ruling on her motion to compel.[6] Imposing an obligation on Plaintiff to do anything else prior to the Court's April 27, 2018 Order is clear error, and finding that a "waiver" occurred during the pendency of the motion likewise is clear error.

**D.     The Magistrate Judge's interpretation of D. Kan. R. 37.1(b) is clear error, and against the weight of applicable caselaw in the District of Kansas.**

Rule 37.1(b) states:

---

[4]  Both Scheduling Orders in this case include the proviso that "the parties and counsel are strongly encouraged to consider arranging a telephone conference with the undersigned magistrate *before* filing [a discovery] motion." (brackets added).

[5]  As part of their response to the privilege issue raised in Doc. 58, Defendants stated:

> [D]rafts of the separation agreement, where Plaintiff was offered pay for a release of claims against LCCA, are privileged and Plaintiff's contention seems to be because there is no privilege log delineating the communications as privileged. **Defendants have repeatedly explained that a privilege log will be produced with the emails being reviewed for production.** There is no waiver and the requested natives are not discoverable.

(Doc. 63 at p. 9) (emphasis added). Defendants would repeat this excuse (i.e. a privilege log would eventually be produced) in communications to undersigned counsel and in later court filings.

[6]  As it turned out, Defendants provided a privilege log  --  and Plaintiff filed her Privilege Motion challenging it  --  before the motion to compel was ruled on.

> **Time for Filing Motions.** Any motion to compel discovery in compliance with D. Kan. Rules 7.1 and 37.2 must be filed and served **within 30 days of the default <u>or</u> service of the response, answer, or objection** that is the subject of the motion, unless the court extends the time for filing such motion for good cause. Otherwise, the objection to the default, response, answer, or objection is waived.

(emphasis added).

The Magistrate's reasoning for "waiver" is premised on the concept that, in a situation where a responding party fails to respond as required by the discovery rules (here, failing to produce a privilege log), a "default" has occurred and, therefore, the requesting party must file a Rule 37.2 Motion within thirty days of the "default". And if the requesting party fails to do that, they are forever barred from moving to compel on the discovery item that previously was the subject of the "default" (here, the privilege log). (*See* Doc. 115 at pp. 4-6). But this reasoning is inconsistent with the text of the Rule. The text clearly provides for two separate bases for a Rule 37.2 Motion: (1) a default (meaning nothing is provided by the responding party); **<u>OR</u>** (2) a deficient response, answer, or objection. To determine if the Rule 37.2 Motion is timely, the Court simply tests whether the "subject of the motion" (i.e. a default OR service of a deficient response, answer, or objection) occurred within the thirty-day period preceding the motion (or, obviously, within any expanded period authorized by the Court).

Nothing in the Rule supports that a requesting party loses the ability to compel on something the responding party is in default as to, but then, at a later time, cures the default by producing the item in default (albeit, as produced, the item qualifies as being "deficient"). Interpreting the Rule in this manner -- aside from being at odds with a plain reading of the Rule -- incentivizes a responding party to default on some discovery issue for at least thirty

days and, then, assuming no Rule 37.2 Motion has been filed during that time, remain in default, knowing the requesting party will have no recourse to compel the discovery item that is the subject of the default. For instance, assuming the item in default was favorable to the requesting party's case, there would be a disincentive for the responding party to cure anything in default -- even if, during the thirty-day period, they expressly promised to produce the item they defaulted on (which is the case here: specifically, the promised, eventual, privilege log). Or, even taking away any strategic maneuvering, such an interpretation incentivizes a responding party to not cure any defaults where, viewing the default in hindsight, thirty days has already passed without a Rule 37.2 Motion being filed.

Cases in the District of Kansas support reading the Rule to allow a requesting party to compel upon a default (or not) and, then, subsequently, move to compel as to a later deficient response, answer, or objection. And this is true even though the default and the later deficiency relate to the same discovery requests (i.e. there is no "one and done" concept within the Rule). *See **Neonatal Prod. Grp., Inc., v. Shields***, No. 13-2601-DDC, 2015 WL 7078796 (D. Kan. Nov. 13, 2015). In ***Neonatal Prod. Grp., Inc.***, Judge Sebelius explained that a requesting party is not forced into having only one opportunity to file a Rule 37.2 Motion, and then having to strategize on whether to file the motion in connection with the responding party's initial response (or default) or wait until after a supplemental response is served (or a default cured):

> D. Kan. Rule 37.1(b) generally "reflects that the triggering event is service of the response that is the subject of the motion."[15] **The time period begins to run when specific information first leading to a dispute is discovered.** . . . Indeed, both parties assume that the triggering event in this case was service of counterclaimants' August 31 objections to discovery. The court disagrees. The present motion to compel is not asking the court to overrule the

discovery objections lodged on August 31. It seeks a court order compelling
counterclaim defendants to produce an unredacted copy of a document first
produced on September 24. Thus, the triggering event was counterclaimants'
supplemental production, which included service of the redacted copy of the
term sheet licensing agreement. Prior to September 24, counterclaim
defendants could not have predicted that counterclaimants would serve a
redacted copy of the document and that they would be in a position in which
they would need to compel production of an unredacted copy.

**Any other interpretation of the local rule would have the potential of
thwarting discovering parties from bringing motions to compel
concerning insufficient supplemental discovery responses. For example,
adopting the parties' interpretation of D. Kan. Rule 37.1(b) would mean
that discovering parties would have no recourse with the court if
deficient supplemental responses were served more than 30 days after
the responding party served its initial responses and objections because
the time to file a motion to compel would have expired.** For example, if a
party produced only a portion of a responsive document or decided to
unilaterally redact certain portions of a responsive document, the discovering
party would be foreclosed from moving to compel a proper response. . . .
Here, however, counterclaim defendants' motion to compel is timely because
they filed it within 30 days of service of the redacted copy of the term sheet
licensing agreement—the supplemental discovery response that is the subject
of the motion to compel.

2015 WL 7078796, at *2–3 (emphasis added); *See also, **United States v. Malik**,* No. 15-CV-
9092-CM-TJJ, 2017 WL 3923210, at *4 (D. Kan. Sept. 7, 2017) ("[Plaintiff] argues Malik
should be foreclosed from raising an issue with the objections some nineteen months after
the Government served its original discovery responses and objections. The Court rejects
this argument. . . .. Malik moved to compel in a timely manner with respect to the
Government's *supplemental* production of documents responsive to Request No. 5 and its
privilege log, which the Government did not produce until June 22, 2017."); **Spilker v.
Medtronic, Inc.**, No. 4:13-CV-76-H, 2015 WL 1643258, at *10 (E.D.N.C. Apr. 13, 2015)
("While many of the issues Plaintiff raised in the motion to compel that form the basis for
the requested extension of deadlines could have been brought to the court earlier, the key

issue with respect to the investigation and protocol documents was not fully developed until production of Defendants' December 2, 2014 privilege log.").

Even if it could be said that Plaintiff took Defendants at their word (i.e. they *would* eventually produce a privilege log) and naively decided to pass on a motion to compel as to Defendants' default[7], but then filed a motion to compel within thirty days of Defendants finally producing a privilege log, doing so is permitted by Rule 37.1(b), and the authority to do so has been the subject of District of Kansas cases. The opposite reasoning in the Privilege Order is in clear error.

**E.** **Given the absence of anything within Rule 37.1(b) or District of Kansas cases putting Plaintiff or her counsel on notice of "waiving" rights, the Magistrate Judge's finding of "waiver" is clear error and manifestly unjust.**

At its most basic level, a "waiver" denotes that the waiving party (here, Plaintiff) intentionally abandoned or gave up her right to enlist the assistance of the Court in: (1) Compelling Defendants to search for responsive documents at LCCA (regardless of where located, including LCCA's Legal Department – directly involved in interfering with Plaintiff's FMLA rights and her termination), (2) overruling as "waived" any privilege objections, (3) compelling a compliant privilege log, and (4) ordering all responsive documents withheld from production based on privilege to be identified on a privilege log. [hereafter (1) – (4) collectively referred to as "Privilege Relief"]. The facts in the record

---

[7] As recited above and as part of the record before the Magistrate, Plaintiff did just the opposite: (1) sent a Golden Rule letter, (2) conferred with defense counsel; (3) conducted a conference with the Court; and (4) ultimately filed a motion to compel pointing out Defendants' default and requesting that the Court deem any objections based on "privilege" to be waived. The Magistrate opted not to find waiver against Defendants despite them not providing a privilege log for months after asserting privilege, but instead found waiver against Plaintiff.

before the Magistrate indicate Plaintiff never intended to give up her right to compel Privilege Relief (as detailed in her Privilege Motion (Doc. 92)). In fact, the record indicates the opposite – Plaintiff steadfastly and persistently sought Privilege Relief, first from Defendants and their counsel, then informally from the Court via a telephone conference, and then as part of her motion to compel (Doc. 58, Doc. 72). Moreover, Plaintiff's research reveals no cases in the District of Kansas which would put Plaintiff or her counsel on notice of the "waiver" analysis utilized by the Magistrate to end Plaintiff's efforts for Privilege Relief. And the cases cited in the Privilege Order (*See* Doc. 115 at p. 6) are inapposite and not supportive.[8] This being true, it is clear error for the Magistrate to find a waiver when Plaintiff and her counsel had no notice that such a finding was even possible.

And the finding of waiver is manifestly unjust. As set forth in Plaintiff's Privilege Motion, it is clear that LCCA's in-house lawyers and staff **were directly involved** in interference with Plaintiff's FMLA rights and her termination – that is they were involved at an active level beyond that of legal advisor.[9] In fact, Defendants completely walled off the

---

[8]  *See **Layne Christensen Co. v. Purolite Co.**,* No. CIV.A. 09-2381-JWL, 2011 WL 124538, at *2 (D. Kan. Jan. 14, 2011); ***Black & Veatch Corp. v. Aspen Ins. (UK) Ltd***, No. 12-2350-SAC, 2014 WL 12595196, at *1 (D. Kan. Sept. 8, 2014). Here, directly opposite the failures in the cases cited by the Magistrate, Plaintiff filed for and was granted until January 12, 2018 to file a motion to compel, and she did, and Plaintiff sent a Golden Rule letter and had a telephone conference with the Magistrate within thirty days of Defendants serving their initial responses.

[9]  Less than ten days after Plaintiff put Defendants on notice of needing FMLA, LCCA in-house counsel directed that a letter be sent demanding Plaintiff to immediately contact Defendant Yosick (attached as **Exhibit B**). Nothing about that direction comes within the realm of "legal advice", rather it is a directive that just as easily could have come from Plaintiff's supervisor, and viewed in the light most favorable to Plaintiff, suggests the in-house lawyer was attempting to create a scenario where it would be impossible for Plaintiff to comply and, therefore, provide a basis for Defendants to terminate Plaintiff for a reason

LCCA in-house lawyers and Legal Department from any searches for documents (including ESI) responsive to Plaintiff's First and Second document requests. Thus, the Magistrate's finding of waiver allows Defendants cover for sidestepping the Federal Rules with respect to Plaintiff's requests for Privilege Relief. Without the Privilege Relief, Plaintiff's ability to receive what she requested in discovery, and is entitled to, is thwarted and will jeopardize her ability to fully present her case in response to summary judgment, and to a jury.

**F.** **To the extent the Magistrate Judge's Privilege Order rests on a "waiver" by Plaintiff during the time period of February 24, 2018 (date of Defendants' first privilege log) and April 6, 2018 (file date of Plaintiff's Privilege Motion), it is clear error as the only reason the 30-day deadline was extended from March 26, 2018 to April 6, 2018 was at the request of Defendants during the pretrial conference, and the additional eleven days for filing the motion clearly was Court authorized.**

Defendants first served a privilege log in the morning hours of February 24, 2018[10], at the tail end of a document production consisting of 12,800 documents. (*See* Doc.88 at p. 3). Putting aside for a moment the fact that Plaintiff (as of February 24, 2018) had already filed a motion to compel concerning Defendants' default as to a privilege log (and was awaiting a ruling from the Court on such motion), the Rule 37.1(b) thirty-day period -- from the service date of Defendants' deficient privilege log -- would have expired on March 26, 2018. As indicated in her Privilege Motion, on March 13, 2018, Plaintiff specifically

supposedly separate and apart from her protected exercise of FMLA rights. Thereafter, the in-house Legal Department was involved in Plaintiff's termination, preparation and presentation of a severance agreement, and discussion and communications regarding Plaintiff's revocation of the severance agreement.

[10] Page 4 of the Privilege Order indicates a "supplemental" privilege log was served by Defendants on February 24, 2018 but, actually, February 24, 2018 was the first time Defendants served any document purporting to indicate what documents had been withheld from production as "privileged".

notified the Magistrate and defense counsel of the potential for a motion to compel being filed as to the privilege log, and noted the thirty-day deadline was March 26, 2018. (Doc. 108 at pp. 2-3). Then, during the pretrial conference held on March 15, 2018, Plaintiff's counsel again raised the issue of a motion to compel concerning Defendants' February 24, 2018 privilege log and indicated he would be filing the motion before the deadline. (March 15, 2018 Court Audio Recording at 13:30-15:24).[11] Defense counsel, though, asked that the March 26, 2018 deadline be extended until April 6, 2018 to give Defendants additional time to cure the deficiencies.  (March 15, 2018 Court Audio Recording at 52:42). The Magistrate himself referenced, several times, the anticipated privilege log motion, and included that motion as being one that needed to be filed by April 6, 2018. (March 15, 2018 Court Audio Recording at 13:30, 41:00 – 51:50, 54.07).

In the Magistrate Judge's Order "Continuing Pretrial Conference" (Doc. 86), he twice referenced the privilege log motion discussed during the March 15, 2018 conference[12], and then indicated that "All motions described in this Order shall be filed by **April 6, 2018**. (Doc. 86 at p. 4) (emphasis in original).

In the event the Magistrate's waiver analysis is in any way premised on Plaintiff's Privilege Motion (Doc. 108) being filed eleven days after March 26, 2018, such a premise is clear error given that the extension was requested by Defendants for their benefit (and not by Plaintiff), and the extension comes within the proviso of Rule 37.1(b) that states the

---

[11]  Undersigned counsel has provided defense counsel with a complete copy of the March 15, 2018 Audio Recording.

[12]  "Furthermore, the parties indicated during the conference that a disagreement may persist concerning discovery that is not currently the subject of a motion." (Doc. 86 at p. 3). "The Plaintiff shall file any unfiled motion relating to discovery." (Doc. 86 at p. 4).

thirty-period governs "unless the court extends the time for filing such motion for good cause."

**G.** **To the extent there is any basis to contend Plaintiff's Privilege Motion (Doc. 108) was untimely, the Magistrate Judge's failure to examine the "excusable neglect" criteria, coupled with his failure to find "excusable neglect", is clear error.**

Although the Magistrate noted the factors to be examined in determining if there was "excusable neglect" for an untimely filing (*See* Doc. 115 at p. 4), there is no indication in the Privilege Order that he considered each of them. And in view of the above information (that was part of the record before the Magistrate), all the factors strongly require a finding of "excusable neglect". Specifically, all the evidence shows Plaintiff "acted in good faith" and did everything imaginable to garner voluntary compliance by Defendants, and then court ordered compliance, as to the rules on privilege objections and privilege logs. Any "delay" in filing the Privilege Motion (which, as set forth above, is non-existent), if any, clearly was beyond the control of Plaintiff. Defendants can claim no prejudice from responding to the Privilege Motion, and/or complying with the relief requested therein (as such compliance should have been completed in the first instance in accordance with the discovery rules), given that Plaintiff made the privilege log an issue with defense counsel and the Court within the thirty days after receiving Defendants' responses to Plaintiff's document requests (i.e. there is no surprise to Defendants or their counsel). And likewise, Plaintiff has persistently made the Court aware of the issue, through formal and informal means.

In his analysis, the Magistrate failed to give Plaintiff the benefit of District of Kansas cases indicating that Plaintiff's efforts for Privilege Relief met and exceeded the threshold for

"excusable neglect".[13] And beyond that, it appears he overlooked that Plaintiff was promised a privilege log, and promised that all privileged documents would be included on the promised log,  and Plaintiff (as set forth hereinabove) repeatedly sought "court intervention" (*See* Doc. 115 at p. 6), rather than blindly relying on Defendants' promises.

**H.    It was clear error and a manifest injustice for the Magistrate Judge to conclude Plaintiff "waived" her right to compel Defendants to cure deficiencies before Plaintiff even knew of the deficiencies.**

As set forth in Plaintiff's Privilege Motion (Doc. 108), Defendants  --  in response to a concern raised by Plaintiff early on that claimed privileged documents would simply be withheld from Defendants' document production without Plaintiff knowing it  --  assured Plaintiff any documents withheld based on privilege would be described on a promised privilege log. Plaintiff rightfully presumed defense counsel's privilege log would be compliant with the oft reported requirements set out by District of Kansas cases, citations of which were gratuitously provided by undersigned counsel as part of conferral efforts. Additionally,

---

[13]  *See Chicago Tribune Co., LLC v. Masterpiece Mktg. Grp., LLC*, No. 13-2157-CM-KGG, 2014 WL 644941, at *2 (D. Kan. Feb. 19, 2014) (Magistrate Judge Gale determined motion filed beyond thirty-day period not untimely because: "Plaintiff's 'golden rule' letter was sent a full week before the deadline for a timely filed motion to compel. Plaintiff went to the additional effort of arranging and participating in a pre-motion conference to resolve these discovery issues without filing a motion. The Court will not penalize Plaintiff for these efforts to resolve the underlying disputes, especially when the efforts began within the time frame established by D. Kan. Rule 37.1."); *McNabb v. City of Overland Park*, No. 12-CV-2331 CM/TJJ, 2014 WL 1493124, at *2 (D. Kan. Apr. 16, 2014) ("The facts in this case are similar to the facts in *Chicago Tribune,* including a meet and confer session prior to the discovery response deadline, extensive communications among counsel, and a pre-motion conference with the assigned magistrate judge, all prior to Plaintiff's filing of the Motion. Plaintiff notes this is an "ongoing discovery dispute" and stresses her efforts to settle the discovery dispute through cooperation with opposing counsel, in the spirit of *Mancia*. The Court will not deny Plaintiff's Motion on untimeliness grounds, given these facts.").

given the heavy involvement by LCCA's Legal Department (in Plaintiff's FMLA leave and termination), Plaintiff anticipated the privilege log would contain a substantial number of documents claimed to be privileged, and  --  given that the role of LCCA's in-house counsel was that of an active agent and not that of a legal advisor  --  Plaintiff expected he would need to challenge at least a portion of the documents listed on the **yet to be produced** privilege log.

Obviously, Defendants' failure to search for responsive documents in the LCCA Legal Department, their failure to include responsive but withheld documents on their privilege log, and their failure to provide all required information (necessary for a challenge) as part of their privilege log, were unknown to Plaintiff's counsel until he received the February 24, 2018 privilege log (which listed a mere ten items). Finding a "waiver" of the right to compel the curing of deficiencies  --  which deficiencies were unknown at the time of the supposed "waiver"  --  is clear error, and manifestly unjust. This result is exactly the underpinning of Judge Sebelius' reasoning in ***Neonatal Prod. Grp., Inc.*** for why such an interpretation of Rule 37.1(b) is unacceptable. *See* 2015 WL 7078796, at *2–3 ("Prior to September 24, counterclaim defendants could not have predicted that counterclaimants would serve a redacted copy of the document and that they would be in a position in which they would need to compel production of an unredacted copy.").

I.       **It is clear error and manifestly unjust, for the Magistrate to, on the one hand, refuse to order that Defendants waived their privilege objections even though Plaintiff specifically and persistently asked him to do so and, then, on the other hand, enter an order determining that Plaintiff's right to Privilege Relief had been waived.**

While Plaintiff is not able to point to a specific case with the same facts leading up to -- and the same result as -- the Privilege Order at issue here[14], the incongruity of the entire thing clearly evokes that clear error and a manifest injustice has occurred. This is particularly so when the exorbitant number of hours and filings by Plaintiff on the privilege log issue (currently all for naught) are considered. And perhaps more concerning is the clear and unmistakable "out" obtained by Defendants (i.e. they are handed an unprecedented pass on privilege objections being waived[15], on having to search for or produce any documents housed in the LCCA Legal Department, and having to identify documents on a compliant privilege log).

---

[14]  In other words, Plaintiff repeatedly asked for a waiver ruling for Defendants' default as to a privilege log, and then immediately sought to cure deficiencies with the privilege log once it was finally produced. Yet, in the end, Plaintiff was left with no waiver as to Defendants' privilege objections, and it was somehow determined that -- despite her persistent efforts in compliance with applicable rules -- Plaintiff altogether waived any rights to a Court ruling or to compel Defendants to comply with the rules on privilege objections.

[15]  It is hard to imagine a more deserving case for a waiver ruling *against Defendants* for improper privilege objections. *See, e.g., **Malik***, 2017 WL 3923210, at *7 ("The Court finds that, by any measure, the Government failed to timely assert, and therefore waived, its claim of privilege and work product as to the five February 2016 emails."). Here, Defendants asserted privilege objections in September of 2017, but then (despite repeated requests for it, and elevating the issue to the Court's attention) only produced a deficient privilege log five months later, and **one week before the close of discovery**.

**J.**     **Conclusion**.

It seems there is no better case for clear error and manifest injustice than the Privilege Order at issue here! Plaintiff respectfully requests that the Magistrate do the right thing by immediately correcting it.

Respectfully Submitted,

**REAVEY LAW LLC**

By:  /s/Patrick G. Reavey                .
         Patrick G. Reavey KS# 17291
         Kevin C. Koc KS# 24953
         Livestock Exchange Building
         1600 Genessee Suite 303
         Kansas City, MO 64102
         Ph: 816.474.6300
         Fax: 816.474.6302
         Email: preavey@reaveylaw.com
         Email: kkoc@reaveylaw.com
         Website: www.reaveylaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of August 2018, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Anthony J. Romano, #13486
Uzo N. Nwonwu, #23492
LITTLER MENDELSON, P.C.
1201 Walnut, Suite 1450
Kansas City, MO 64106
Telephone: 816.627.4400
Facsimile: 816.627.4444
aromano@littler.com
unwonwu@littler.com
ATTORNEYS FOR DEFENDANTS

/s/ Patrick G. Reavey.